A98A1952. THE STATE v. KAYLOR.
(507 SE2d 233)

BLACKBURN, Judge.

The State does not enumerate as error, or argue on appeal, the trial court's exclusion of the breathalyzer test based on the State's failure to accommodate Kaylor's request for an independent blood test pursuant to OCGA § 40-6-392. Rather, the State's appeal and enumeration of error is limited to the issue of whether Rieck's initial contact with Kaylor violated Kaylor's Fourth Amendment rights, and that is the only issue which we address. For the reasons set forth below, we reverse.

"When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them." (Citations omitted.) *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990).

As found by the trial court, the facts in this case are as follows. In the early morning hours of October 11, 1997, Officer William Rieck received a dispatch from police headquarters that an anonymous caller had reported to 911 emergency services that a drunk driver was operating a green Ford Aerostar van with a certain license plate number. The van, on which a police "lookout" had been placed, passed by Rieck's vehicle in the opposite direction and pulled into the parking lot of a convenience store. Rieck observed no traffic violations being committed. Rieck then turned his vehicle around and parked his car behind the van, without blocking the van's means of egress. Rieck did not employ the lights on his police vehicle. While Kaylor was inside the store, Rieck confirmed that the van's license plate number matched the number provided by the tipster.

After Kaylor exited the store carrying a cola and a bag of potato chips, Rieck approached him, noting that Kaylor's appearance was disheveled. Rieck advised Kaylor that his van matched the description of a vehicle reported to have been operated by a drunk driver, and he requested Kaylor's driver's license and proof of insurance. Rieck detected the smell of an alcoholic beverage on Kaylor's breath and person, and Kaylor, whose stance was unsteady, had trouble understanding Rieck's instructions to stop eating and drinking long enough to answer his questions. After other officers arrived at the scene, Rieck asked Kaylor to perform a "heel to toe" field sobriety test, which Kaylor performed poorly. Kaylor refused to participate in any other tests.

Rieck then took Kaylor into custody, read implied consent rights to him, and asked him to submit to a state-administered breath test. This test was later performed at the police department, and the registered results were a blood-alcohol level of .088 and .085. However, the trial court found that the results of this test had to be excluded because Rieck's request for an additional, independent test was not appropriately accommodated pursuant to OCGA § 40-6-392.

"Under our law, there are three levels of police-citizen encounters. In the first level, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long

as the officers do not detain the citizen or create the impression that the citizen may not leave. This tier provides no Fourth Amendment protection. . . . The second tier occurs when the officer actually conducts a brief investigative *Terry* stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity." (Citations omitted.) *State v. Banks*, 223 Ga. App. 838, 839-840 (479 SE2d 168) (1996). The third tier of police-citizen encounters include "full-scale arrests that must be supported by probable cause." (Punctuation omitted.) *Alexander v. State*, 166 Ga. App. 233, 234 (2) (303 SE2d 773) (1983).

In *McClain v. State*, 226 Ga. App. 714 (487 SE2d 471) (1997), after following the suspect on the hunch that he might speed, an officer pulled his patrol car alongside the suspect's car in the parking lot of a shopping center into which the suspect had turned. "Even though the officer did not flag [the suspect], turn on his blue flashing lights, nor do anything else to indicate he wanted [the suspect] to stop, [the suspect] stopped and the officer pulled up alongside. To this point, the officer had observed no traffic violations." Id. at 715. When the suspect responded to the officer's questions about where he was going, the officer smelled alcohol and asked the suspect to "wait here just a second." Then, the officer asked the suspect for his driver's license, and the officer noticed that the suspect's eyes were red and glassy and that his speech was slurred. After admitting that he had imbibed five or six beers, the suspect failed several field sobriety tests, and the officer arrested the suspect for driving under the influence. Id. Prior to his trial, the suspect filed a motion in limine to exclude the officer's testimony, which the trial court denied.

In affirming the trial court's denial of the motion to suppress in *McClain*, we held: "The officer's following of [the suspect's] vehicle . . . did not indicate that [the suspect] was not free to drive on. Nor did the officer's approaching [the suspect's] stopped vehicle and making inquiries as to what was going on constitute a seizure of [the suspect]. The actions of an officer approaching a stopped vehicle, requesting to see a driver's license, and inquiring about possible criminal or suspicious activity clearly fall within the realm of the first type of police-citizen encounter and do not amount to a stop." (Citation omitted.) Id. at 716.

The same principles which applied in *McClain* are applicable here. As he could with any citizen, Rieck could "approach [Kaylor], ask for identification, and freely question [Kaylor] without any basis or belief that [Kaylor was] involved in criminal activity [without triggering the Fourth Amendment], as long as [Rieck did] not detain [Kaylor] or create the impression that [Kaylor could] not leave." Id.

498

Therefore, contrary to the trial court's opinion, Rieck's initial encounter with Kaylor was not a stop, and the Fourth Amendment was not triggered at all. Moreover, once Rieck began talking to Kaylor, Rieck detected the strong odor of alcohol from a distance of four feet from Kaylor, Kaylor had difficulty following Rieck's instructions, and Kaylor performed poorly on a field sobriety test. Such evidence gave Rieck reasonable grounds to determine whether Kaylor had been driving under the influence. *Crosby v. State*, 214 Ga. App. 753, 755 (449 SE2d 147) (1994). Accordingly, we reverse the trial court's finding that all evidence obtained after Rieck's initial contact with Kaylor must be suppressed.

*Judgment reversed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED SEPTEMBER 22, 1998.

*Keith C. Martin, Solicitor, Kimberly A. Gross, Michael L. Tripp, Assistant Solicitors*, for appellant.
*Thomas S. Barton*, for appellee.