## A00A0163. VAUGHN v. THE STATE.
### (534 SE2d 513)

POPE, Presiding Judge.

After a bench trial, Billy Vaughn was convicted of driving under the influence pursuant to OCGA § 40-6-391 (a) (1), driving while his license was suspended, and violating the open container law. He appeals, arguing that the trial court erred by denying his motion to suppress and that the evidence was insufficient to convict for DUI and violating the open container law.[1] For the following reasons, we reject Vaughn's arguments and affirm.

The evidence shows that on April 4, 1999, the Georgia State Patrol was conducting a roadblock in Spalding County. The officers were checking every vehicle for any kind of violation. Vaughn, who was driving a truck, approached the roadblock, where traffic was backed up for four or five cars. About 50 feet before the roadblock, Vaughn turned left into a driveway. Vaughn got out of his truck and began walking toward a house.

State Trooper Brown testified that, based on his experience, when a person turns off the road immediately before a roadblock, he usually suspects that the person is trying to avoid the roadcheck. Accordingly, Brown called to Vaughn, but Vaughn did not respond. Brown then walked through the yard toward Vaughn and saw that Vaughn was knocking on the door of a house, which appeared to be vacant.

---

[1] Vaughn raises no arguments here regarding the conviction for driving with a suspended license.

Brown asked Vaughn his name and asked him for his driver's license. Brown recalled that Vaughn stated that he did not have his license. Vaughn told Brown that his name was "Anthony," although the name "Billy" was imprinted on his shirt. Vaughn told Brown that the shirt belonged to a relative.

In talking with Vaughn, Brown smelled alcohol on Vaughn's person. Brown next asked Vaughn if he lived in the house at which he had stopped. Vaughn said that he did not live in the house, but that one of his relatives did. Brown noticed that Vaughn was slurring his speech and that his eyes were red and glassy. Brown and Vaughn then walked back to Vaughn's truck, and Brown looked in the vehicle where he saw a 12-ounce can of beer and a partially empty 12-pack box of beer.

Based on these indications, Brown conducted a field sobriety test which Vaughn failed. Brown testified that he had seen a citation sticking out of Vaughn's pocket. To determine Vaughn's name, Brown asked to see the papers and saw that the citation had been issued to "Billy Ray Vaughn."

Brown then ran Vaughn's driver's license and learned that it was suspended. After learning this, Brown arrested Vaughn for DUI and driving on a suspended license. Brown read Vaughn his rights, and Vaughn refused to take the breath test. Brown testified that, in his opinion, Vaughn was a less safe driver because he was under the influence of alcohol.

1. Citing *Strawser v. State*, 239 Ga. App. 125 (520 SE2d 750) (1999), and *Jorgensen v. State*, 207 Ga. App. 545 (428 SE2d 440) (1993), Vaughn claims that the trial court erred by denying his motion to suppress because Brown presented no articulable suspicion to justify continuing retention beyond the initial confrontation. In reviewing a trial court's denial of a motion to suppress,

> the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings of the disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them.

(Citations and punctuation omitted.) *Rogers v. State*, 206 Ga. App. 654 (426 SE2d 209) (1992).

So viewing the evidence here, we reject Vaughn's arguments. First, regardless of whether Brown had an "articulable suspicion" when he approached Vaughn, there was no requirement that Brown have an "articulable suspicion" before he approached Vaughn to talk with him.

> Communications between police and citizens involving no coercion or detention are outside the domain of the Fourth Amendment, and no seizure requiring a reasonable suspicion of unlawful activity occurs simply because a police officer approaches an individual and asks a few questions.

(Citations omitted.) *Rogers v. State*, 206 Ga. App. at 656-657 (1).

> [E]ven when officers have no basis for suspecting a particular individual of a crime, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search[,] as long as the police do not convey a message that compliance with their request is required. It is clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free to disregard the police and go about his business the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature.

(Citations and punctuation omitted.) *Burns v. State*, 216 Ga. App. 178, 179-180 (454 SE2d 152) (1995). See also *McClain v. State*, 226 Ga. App. 714, 715-718 (1) (487 SE2d 471) (1997); *State v. Westmoreland*, 204 Ga. App. 312-313 (1) (418 SE2d 822) (1992).

In this case, Brown's initial inquiries to Vaughn did not amount to a "seizure" under the Fourth Amendment. The record shows that the initial meeting between Brown and Vaughn consisted only of Brown asking for identification, asking for Vaughn's name and asking what Vaughn's business was at this house. No constitutional rights were impeded by Brown's initial approach. See *McClain*, 226 Ga. App. at 716.

After Brown's initial questioning of Vaughn, he had a reasonable, articulable suspicion that Vaughn was intoxicated. This suspicion was based on the many factors Brown had observed: the fact that Vaughn had turned off the road before the roadblock; the smell of alcohol on Vaughn; his red and glassy eyes; his slurred speech; and the fact that the name he gave was not the name on his shirt. Thus, at this point Brown properly administered the field sobriety test. See *State v. Stansbury*, 234 Ga. App. 281 (505 SE2d 564) (1998). Only after Vaughn failed the field sobriety test, and after Brown discovered that Vaughn's driver's license was suspended, did Brown decide to arrest Vaughn. Moreover, though it is true that Brown did not see Vaughn commit a traffic violation, "[t]here is no requirement that the person actually commit an unsafe act" to violate OCGA § 40-6-391 (a)

(1). (Punctuation omitted.) *State v. Smith*, 196 Ga. App. 876, 877 (397 SE2d 304) (1990).

Because Brown's initial encounter with Vaughn did not constitute a stop and because Brown developed reasonable, articulable suspicion before seizing Vaughn, the facts of this case differ from those in *Strawser v. State*, 239 Ga. App. 125, and *Jorgensen v. State*, 207 Ga. App. 545. See generally *Castillo v. State*, 232 Ga. App. 354 (502 SE2d 261) (1998).

2. Vaughn also argues that the evidence was insufficient to convict on the DUI charge and the charge for an open container violation. Given the testimony of Trooper Brown, the evidence was sufficient to convict on the open container violation. And, as stated above, there is no requirement that the person actually commit an unsafe act to violate OCGA § 40-6-391 (a) (1). See *State v. Smith*, 196 Ga. App. at 877. See also *Shannon v. State*, 205 Ga. App. 831, 833 (4) (424 SE2d 51) (1992). Thus, the evidence was sufficient to convict Vaughn of this offense. Accordingly, this enumeration lacks merit, and we find that a rational trier of fact could find from the evidence adduced at trial proof of Vaughn's guilt of these offenses beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Smith, P. J., and Miller, J., concur.*

DECIDED MAY 4, 2000.

*Thomas R. Morgan, Jr.,* for appellant.
*Griffin E. Howell III, Solicitor,* for appellee.