A02A1635. BRITTIAN v. THE STATE.
(572 SE2d 76)

ANDREWS, Presiding Judge.

Following a bench trial upon stipulated facts, Brian Brittian appeals his DUI conviction, contending that the trial court improperly denied his motion to suppress/in limine. That motion was premised on Brittian's contention that the officer did not have a reasonable, articulable suspicion justifying a *Terry*[1] stop. The trial court, after hearing the officer's testimony, found that no *Terry* stop had occurred and the contact between officer and citizen was a "first tier stop" not requiring articulable suspicion. We agree.

In reviewing denial of a motion to suppress or in limine, we apply the following three principles:

First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge "hears the

---

[1] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]." *State v. Swift*, 232 Ga. 535, 536 (207 SE2d 459) (1974). Second, the trial court's decision with regard to "questions of fact and *credibility* . . . must be accepted unless clearly erroneous." *Woodruff v. State*, 233 Ga. 840, 844 (213 SE2d 689) (1975). (Emphasis supplied.) Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. *Anderson v. State*, 133 Ga. App. 45, 47 (209 SE2d 665) . (1974).

*Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

At the motion hearing, Georgia State Trooper Cofield testified that he was pumping gas into his patrol car at the Amoco station at Thomas Crossroads, the intersection of Highways 34 and 154 near Newnan. He heard over his radio a BOLO[2] issued by the Coweta County Sheriff's Department for a red Ford pickup which had backed over a curb and flowers at an Applebee's located on Highway 34. The truck was reported heading east on Highway 34 toward Thomas Crossroads and the Amoco station. As Cofield was getting back to his patrol car, he heard that a witness was following the truck. Cofield proceeded west on Highway 34 and met a red Ford pickup within a short distance. It was about 3:30 p.m. and there was a good volume of traffic, but only one red Ford pickup. In order to get into traffic and turn around behind the truck, Cofield activated his blue lights. As he arrived at the traffic light, he saw the truck turn right into the Amoco station. As Cofield stated: "[b]y the time I made it to the parking lot and turned into the parking lot, the driver, Mr. Brittian, was exiting the vehicle going into the store. I pulled up behind his car and yelled for him to stop and come talk to me for a minute. . . . His vehicle was stopped and parked and he was out of it when I turned into the parking lot." Brittian walked back to his truck to speak with Cofield, who verified that the truck's license matched that given by the caller.

Upon talking to Brittian, Cofield noticed the odor of alcohol and that Brittian had red, glassy eyes. Cofield asked if Brittian had been to Applebee's, and Brittian said he had just left there. Asked if he had been drinking, Brittian said he had been drinking all night the night before and he had only two large beers at Applebee's. Brittian was then given field sobriety tests and placed under arrest.

---

[2] Be on the lookout.

At least three types of police-citizen encounters exist: verbal communications involving no coercion or detention; brief "stops" or "seizures" that require reasonable suspicion; and "arrests," which can only be supported by probable cause. *Verhoeff v. State*, 184 Ga. App. 501, 503 (362 SE2d 85) (1987). A first-tier encounter never intrudes upon any constitutionally protected interest, since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual citizens. *Verhoeff,* supra at 503. On the other hand, a second-tier encounter may violate the Fourth Amendment if the officer briefly "stops" or "seizes" a citizen without an articulable suspicion. Articulable suspicion requires a particularized and objective basis for suspecting that a citizen is involved in criminal activity. See *Painter v. State*, 227 Ga. App. 875, 877 (490 SE2d 544) (1997). Moreover, a "seizure" within the meaning of the Fourth Amendment only occurs when, in view of all the circumstances surrounding the incident, a reasonable person believes that he is not free to leave. *Moran v. State*, 170 Ga. App. 837, 840 (1) (318 SE2d 716) (1984).

*Stokes v. State*, 238 Ga. App. 230, 231-232 (518 SE2d 447) (1999).

Here, Brittian was already out of his car and headed into the store when Cofield got his attention by yelling at him. There is no evidence that, prior to the officer's calling to him, Brittian was even aware of the officer's presence. "The actions of an officer approaching a stopped vehicle, requesting to see a driver's license, and inquiring about possible criminal or suspicious activity clearly fall within the realm of the first type of police-citizen encounter and do not amount to a stop. [Cits.]" *McClain v. State*, 226 Ga. App. 714, 716 (1) (487 SE2d 471) (1997). See also *State v. Ledford,* 247 Ga. App. 412, 414 (1) (543 SE2d 107) (2000) (car already stopped when officers approached and asked consent to search); *Stokes,* supra.

There was no stop when Cofield called to Brittian and asked to speak to him. As in *Vaughn v. State*, 243 Ga. App. 816, 817 (1) (534 SE2d 513) (2000), the officer's calling or yelling to a citizen to get his attention does not require articulable suspicion. Once Cofield was close to Brittian, he noticed the odor of alcohol and bloodshot eyes and, at that point, had the required articulable suspicion to continue his inquiry. In *Vaughn,* supra, an officer conducting an all vehicle roadblock observed Vaughn approach the roadblock, turn into a driveway, and get out of his truck. Based on his experience, the officer believed Vaughn was avoiding the roadblock and went to

speak with him. He called to Vaughn, who did not respond. The officer then walked through the yard and talked to Vaughn, observing indications that he was intoxicated.

There, as here, this initial encounter was found not to be a *Terry* stop.

*McKinley v. State*, 213 Ga. App. 738 (445 SE2d 828) (1994), relied upon by Brittian, is factually distinguishable, primarily upon the basis that, before the men were able to get out of their van, police pulled up beside the van, activated their lights, pulled out their badges, and began directing the actions of the men, including telling one to get back in the van. They then took and retained the driver's license and van rental agreement.

There was no error in the trial court's conclusions regarding Brittian's encounter with Trooper Cofield.

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED OCTOBER 4, 2002 — 

*Virgil L. Brown & Associates, Virgil L. Brown, Eric D. Hearn, Larkin M. Lee, T. Robert Perkerson,* for appellant.

*Robert Stokely, Solicitor-General, Seay VanPatten-Poulakos, Robert W. Smith, Jr., Assistant Solicitors-General,* for appellee.