A09A1351. LEROUX v. THE STATE.
(684 SE2d 424)

SMITH, Presiding Judge.

We granted the application of Jonathan LeRoux for an interlocutory appeal to consider the denial of his motion to suppress. He

---

contends that the police lacked an articulable suspicion to stop his vehicle. We disagree and affirm.

We must follow three principles when reviewing a trial court's order concerning a motion to suppress evidence:

> First, the judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations and punctuation omitted.) *State v. Hester*, 268 Ga. App. 501, 502 (602 SE2d 271) (2004). So viewed, the evidence shows that a University of Georgia police officer was patrolling in the area of the university golf course at approximately 2:30 a.m. when he saw a car pull into the golf course driveway. Ordinarily the driveway is blocked by a gate about 30 yards from the main road, but the gate had been damaged by a car and was stuck in the open position. The golf course has posted signs to inform drivers that it is the university golf course and to indicate the location of various facilities. But no signs reading "no trespassing" are posted because that function is normally served by the gate. The officer had been instructed to patrol the golf course a specific number of times during the night shift because the golf course was having problems with crime after hours, including theft, vandalism, and poaching on the property.

The officer observed the car as it drove through the gate and proceeded all the way to the end of the driveway, "a little over a quarter mile." The officer testified that many areas along the driveway, including the area outside the gate, were available for the driver to turn around if he had made a wrong turn. As the officer followed the car, he saw it go all the way to the back parking lot, "go down, around, and then he looked like he did one full circle of the parking lot." When the driver "was going for a second" loop, the officer stopped him because "he had no reason to be there and to be driving loops in the parking lot."

While he acknowledged that the driver committed no traffic violations, in response to a question on cross-examination suggesting "there were no signs of any peculiar driving," the officer responded, "Driving through the University of Georgia golf course at 2:30 a.m., I thought that was peculiar. That's why I stopped him." Upon being stopped, LeRoux was charged with DUI.

At least three types of police-citizen encounters exist: verbal communications involving no coercion or detention; brief "stops" or "seizures" that require reasonable suspicion; and "arrests," which can only be supported by probable cause. A first-tier encounter never intrudes upon any constitutionally protected interest, since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual citizens. On the other hand, a second-tier encounter may violate the Fourth Amendment if the officer briefly "stops" or "seizes" a citizen without an articulable suspicion. Articulable suspicion requires a particularized and objective basis for suspecting that a citizen is involved in criminal activity.

(Citations omitted.) *Brittian v. State*, 257 Ga. App. 729, 731 (572 SE2d 76) (2002). Here, numerous crimes had been committed on the golf course property after hours, to the point that the police department directed that officers on the midnight shift patrol the golf course a certain number of times during the night. LeRoux drove at 2:30 a.m. through a gate and past signs clearly indicating that the roadway was private property. He drove past many places where he could have turned around or stopped if he had taken a wrong turn or stopped if he needed to consult a map or make a telephone call. Once he reached the end of the roadway, he entered a parking lot and began circling, and he continued to circle rather than exit the parking lot when he returned to the entrance.

This behavior was sufficiently unusual to provide a basis for the officer's stated suspicion that LeRoux might be involved or about to be involved in criminal activity.[1] Under similar circumstances, an officer on routine patrol observed a vehicle parked in a remote area of a motel parking lot at 4:45 a.m. and approached to inquire what the occupants were doing there. As we observed in that case:

> The officer testified that numerous other crimes had occurred in the area; and we believe his observance of the appellant and his companions sitting for no apparent reason in a parked automobile in a remote part of a motel parking lot located in a "high crime area" at 4:45 a.m. was sufficient

---

[1] While the trial court suggested as an alternative basis that the officer could have intended to render aid to a lost driver, no evidence was submitted to support that conclusion. See, e.g., *State v. Stearns*, 240 Ga. App. 806, 808 (524 SE2d 554) (1999) (no evidence in record to support finding; trial court erred in granting motion to suppress).

to excite a reasonable suspicion that criminal activity might be afoot. Consequently, we hold that the officer was authorized to conduct a brief on-the-scene investigative detention pursuant to *Terry v. Ohio.*

(Citations omitted.) *Bozeman v. State*, 196 Ga. App. 743, 743-744 (1) (397 SE2d 30) (1990). See also *Singleton v. State*, 235 Ga. App. 88, 89 (508 SE2d 461) (1998) (officers authorized to question occupants of car parked in remote area of parking lot at 3:00 a.m. in apartment complex known for drug activity). Here, the facts are even more compelling, as LeRoux was not in a motel or apartment parking lot where guests or tenants might legitimately be present even in the early hours of the morning.

LeRoux argues that the officer had no articulable suspicion to stop his car, citing several Court of Appeals decisions involving traffic stops, primarily *State v. Winnie*, 242 Ga. App. 228 (529 SE2d 215) (2000), and *Attaway v. State*, 236 Ga. App. 307 (511 SE2d 635) (1999). Those cases, however, are factually inapposite here. In *Winnie*, an officer saw a truck turn into the parking lot of a closed business at 4:00 a.m., and he decided to stop the truck because the occupants could have been there to commit a burglary. 242 Ga. App. at 229. As the officer entered the parking lot, however, the truck left. Id. The trial court granted the motion to suppress, and we affirmed, noting that even if the officer suspected a burglary, the basis for his suspicion disappeared when the truck left the parking lot. Id. at 230.

Here, unlike in *Winnie*, LeRoux did not briefly enter the parking lot of a business adjoining the public road, but drove through a gate and down a roadway a quarter mile through clearly marked private property and then circled the parking lot. The basis for the stop did not dissipate because LeRoux never left the parking lot. Instead, he was beginning his second circle when the officer stopped him. Moreover, the officer in this case testified specifically to problems with criminal activity on the golf course, while the officer in *Winnie* "had not received any report of criminal activity at the" property on which Winnie briefly parked. Id. at 229.

In *Attaway*, supra, the stop occurred not on private property but on a public street in a subdivision. 236 Ga. App. at 308. The police received reports of a red car driving slowly several times through the neighborhood, and an officer saw and stopped Attaway's red car as it left the subdivision. Id. The officer acknowledged that he initiated the stop of the car only "because it matched the dispatcher's description and because there had been many previous reports of vandalism in the area. He testified that he wanted to see if the driver had any valid reason to be in the neighborhood." Id. We held that "driving around a subdivision several times late at night" did not

provide an articulable suspicion for a *Terry* stop. Id. at 309. In contrast, LeRoux drove deep into a closed golf facility in the early morning hours, far from a public road. Additionally, the officer did not stop LeRoux when he first entered the golf course or when he entered the parking lot. Instead, he waited until LeRoux began a second circle of the lot adjoining the obviously closed clubhouse.

Other decisions cited by LeRoux are likewise distinguished by their facts. See, e.g., *Baker v. State*, 256 Ga. App. 75 (567 SE2d 738) (2002) (appellant drove down alley connecting two state highways, in high-crime commercial area late at night, after nearby businesses were closed, but not in proximity to any business); *Howden v. State*, 240 Ga. App. 139 (522 SE2d 279) (1999) (employee drove out of business parking lot late at night shortly after officer arrived); *Brooks v. State*, 129 Ga. App. 109, 111 (198 SE2d 892) (1973) ("All we have are the two facts that the hour was after midnight, and that the couple chose to turn off from a main road onto a side road.").

The trial court did not err in denying LeRoux's motion to suppress.

*Judgment affirmed. Phipps and Bernes, JJ., concur.*

DECIDED OCTOBER 6, 2009.

*Fellows & LaBriola, Megan C. Haley, John W. Donnelly*, for appellant.

*Carroll R. Chisholm, Jr., Solicitor-General, Markus Boenig, Assistant Solicitor-General*, for appellee.