A10A0736. BUTLER v. THE STATE.
(694 SE2d 168)

MIKELL, Judge.

Jennifer Butler was charged by accusation with driving under the influence of alcohol to the extent she was a less safe driver (DUI), in violation of OCGA § 40-6-391 (a) (1). Butler filed a motion to suppress/motion in limine, challenging the lawfulness of the stop. After the trial court denied her motion, Butler agreed to a bench trial, at which the officer's testimony at the motion to suppress hearing was admitted by stipulation. Butler offered no additional evidence during the bench trial. She was convicted of DUI and sentenced to 12 months, the first 48 hours to be served in confinement and the remainder on probation, a $500 fine, 40 hours of community service, and completion of a risk reduction course and clinical evaluation. On appeal, Butler challenges the denial of her motion to suppress/motion in limine. That motion was premised on Butler's contention that the officer did not have a reasonable, articulable suspicion justifying a *Terry*[1] stop of Butler's vehicle. The trial court, after hearing the officer's testimony, found that no *Terry* stop had occurred and the contact between officer and citizen was a "first-tier stop," which did not require articulable suspicion. We agree and affirm Butler's conviction.

In reviewing a trial court's ruling denying a motion to suppress or in limine, the following three principles apply:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and *credibility* must be accepted unless clearly erroneous. Third, the reviewing court must

---

[1] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

construe the evidence most favorably to the upholding of the trial court's findings and judgment.[2]

Because there was testimonial evidence in this case, we do not apply a de novo standard of review.[3]

At the motion hearing, Staff Sergeant Thomas Harper of the Columbia County Sheriff's Office testified that on October 13, 2008, he was dispatched in response to a 911 call concerning a domestic dispute at 921 Napiers Post Drive. As Harper approached, he saw a gray car pull out of the driveway at that address and come up the road. Harper rolled down his window, stuck his arm out, and waved at the car. The car stopped, and Harper asked the driver, Butler, if she had just pulled out of the driveway of 921 Napiers Post. She replied that she had. Harper testified that at this point,

> I was trying to investigate a domestic dispute. I didn't know if [Butler] was a suspect that was involved in the domestic dispute or if she happened to be just company that was there and happened to leave and didn't know anything about it so I asked her point blank. I said are you — we got a call for a domestic dispute were you involved and she said, yeah. I said do you mind turning around, let's go back and get to the bottom of it. She said, no, I don't mind at all. So she turned around and went back to the house.

Harper testified that at this point, Butler was not in custody.

After Butler drove back to the house, Harper went inside with her to investigate the domestic call. During his conversation with her, he observed that her speech was slurred, her face was flushed, and her eyes were bloodshot; and he could detect an odor of alcohol coming from her person. Butler admitted to Harper that she had been drinking. Butler was subsequently arrested and charged with DUI. Butler appeals from her conviction for DUI, contending that Harper's stop of her vehicle was a second-tier stop unsupported by reasonable, articulable suspicion, and that the trial court therefore erred in denying her motion to suppress. We find Butler's contention to be without merit.

"At least three types of police-citizen encounters exist: verbal communications involving no coercion or detention; brief 'stops' or 'seizures' that require reasonable suspicion; and 'arrests,' which can

---

[2] (Citations and punctuation omitted; emphasis in original.) *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

[3] See *State v. Guyton*, 295 Ga. App. 786, 787 (673 SE2d 290) (2009).

only be supported by probable cause."[4] The issue before us in this case is whether the officer's action in flagging down Butler's moving vehicle constitutes an encounter of the first or the second type.

> A first-tier encounter never intrudes upon any constitutionally protected interest, since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual citizens. On the other hand, a second-tier encounter may violate the Fourth Amendment if the officer briefly "stops" or "seizes" a citizen without an articulable suspicion. Articulable suspicion requires a particularized and objective basis for suspecting that a citizen is involved in criminal activity. Moreover, a "seizure" within the meaning of the Fourth Amendment only occurs when, in view of all the circumstances surrounding the incident, a reasonable person believes that he is not free to leave.[5]

Ordinarily, "[t]he stop of a moving vehicle in order to question the occupant[ ] is an investigative detention pursuant to *Terry v. Ohio*,"[6] that is, a second-tier stop, which "must be justified by specific and articulable facts which . . . reasonably warrant [the] intrusion."[7] Although Butler's car was in motion when Harper flagged it down, we do not find that this circumstance automatically raises the encounter to that of a "stop" or "seizure" requiring reasonable, articulable suspicion. The evidence in the record supports the trial court's conclusion that no *Terry*-type stop occurred in this case. The vehicle driven by Butler had just exited the address called in on a domestic dispute; the officer waved her to a stop and asked her if she had, in fact, come from that address; when she replied in the affirmative, he then asked if she was involved in the domestic dispute; when she again answered in the affirmative, he asked her if she would mind turning around. She consented to do so.

There was no evidence that Harper created the impression that Butler could not leave.[8] There was no evidence that his lights were

---

[4] (Citation omitted.) *Brittian v. State*, 257 Ga. App. 729, 731 (572 SE2d 76) (2002).

[5] (Citations omitted.) Id.

[6] *Holden v. State*, 241 Ga. App. 524, 525 (527 SE2d 237) (1999), citing *Terry v. Ohio*, supra.

[7] (Citation omitted.) *Holden*, supra.

[8] See *Carrera v. State*, 261 Ga. App. 832, 834 (584 SE2d 2) (2003) (police approached defendant's parked car but did not give impression that defendant could not leave); *State v. Kaylor*, 234 Ga. App. 495, 497 (507 SE2d 233) (1998) (first-tier encounter where officer did not

flashing or that his weapon was drawn.[9] There was no evidence that Harper yelled at her,[10] that he forcibly opened her car door,[11] or that he prevented her from leaving the area.[12] Indeed, the record reflects that she was given the choice to leave or to return to the house; thus, she "was free to refuse the request and leave the scene."[13] She voluntarily chose to return.

Butler contends that she was not free to leave the scene by reason of OCGA § 40-6-395 (a), which provides that "[i]t shall be unlawful for any driver of a vehicle willfully to fail or refuse to bring his or her vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer when given a visual or an audible signal to bring the vehicle to a stop." However, this statute has no application in the case before us. As the officer's testimony makes clear, Butler was free to leave at any time while she was in her car conversing with the officer; there was no "pursuit" involved here.

As the evidence showed no coercion or detention by the officer,[14] the trial court had grounds to find that this was not a "stop." Thus, the court correctly held that it was a first-tier encounter that did not require articulable suspicion. As some evidence supported the trial court's ruling, it is affirmed.[15]

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED APRIL 7, 2010.

*Garrett, Gilliard & Saul, Michael T. Saul*, for appellant.

---

create impression that defendant could not leave, after officer approached defendant standing outside his parked car).

[9] See *Carrera*, supra (first-tier encounter where officers approached without blue lights flashing or weapons drawn).

[10] Compare *State v. Causey*, 246 Ga. App. 829, 832 (1) (a) (540 SE2d 696) (2000) (stop of defendant's moving vehicle was a second-tier, not a first-tier, encounter where officer held out his hand and "yelled" for defendant to stop).

[11] Compare *Smith v. State*, 288 Ga. App. 87, 88 (653 SE2d 510) (2007) (officer forcibly opened defendant's car door, thus physically restraining defendant's movement and elevating stop beyond first-tier).

[12] Compare *Peters v. State*, 242 Ga. App. 816, 817 (1) (531 SE2d 386) (2000) (encounter was second-tier where officers verbally commanded defendant to stop and prevented him from entering his parked car).

[13] (Citation omitted.) *Voyles v. State*, 237 Ga. App. 886, 887 (1) (517 SE2d 113) (1999) (where defendant could have refused officer's request to search her car and was free to leave the scene, encounter was of first tier).

[14] See *Carrera*, supra.

[15] See *Blankenship v. State*, 301 Ga. App. 602, 605 (2) (b) (688 SE2d 395) (2009).

*Ashley Wright, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.