## A10A1743. BACALLAO v. THE STATE.
### (705 SE2d 307)

MIKELL, Judge.

After a bench trial, Denise Bacallao was convicted of driving under the influence per se[1] and driving under the influence to the extent that it was less safe.[2] On appeal, Bacallao challenges the trial court's denial of her motion to suppress. Discerning no error, we affirm.

When reviewing a trial court's order on a motion to suppress, we are guided by three principles with respect to the trial court's judgment of the facts:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[3]

"Because there was testimonial evidence in this case, we do not apply a de novo standard of review."[4]

Construed in favor of the trial court's judgment, the record shows that Georgia State Patrol Post 32 conducted a roadblock in Oconee County for the purpose of checking driver's licenses, seat belts, driver impairment, and vehicle fitness. Trooper Charles Parker testified that he was one of the screening officers working the

---

[1] OCGA § 40-6-391 (a) (5).
[2] OCGA § 40-6-391 (a) (1).
[3] (Footnote omitted.) *Taylor v. State*, 249 Ga. App. 733 (549 SE2d 536) (2001).
[4] (Footnote omitted.) *Butler v. State*, 303 Ga. App. 564, 565 (694 SE2d 168) (2010).

roadblock; that he observed Bacallao driving a white van; and that the van turned right headed toward the checkpoint then made an immediate left into the second entrance of the gas station parking lot that was just south of the checkpoint. Parker testified that he approached Bacallao as she exited her vehicle to question her because he did not know if she was going to the gas station or attempting to avoid the roadblock. Parker advised Bacallao that they were conducting a license check and asked to see Bacallao's license. Bacallao gave Parker her license, and as they talked, he detected the odor of alcohol on her breath. Parker asked Bacallao how much alcohol she had consumed that day, and she told him that she had three glasses of wine, the last of which she had drunk recently in her home.

Parker asked Bacallao to take a horizontal gaze nystagmus test, during which she displayed six of six clues. Parker then asked her to perform a breath test, and the breath test results were positive for alcohol. Because Bacallao had recently consumed a glass of wine, Parker waited 20 more minutes then administered the breath test again, and the second test also was positive for alcohol. Parker then arrested Bacallao for driving under the influence. Parker testified that he read Georgia's implied consent warning to Bacallao, then walked Bacallao to the alcohol testing trailer to administer another breath test, utilizing the Intoxilyzer 5000. Bacallao gave two breath samples, and the lower test result indicated a blood alcohol level of 0.106.

Bacallao testified that she lived within a half mile of the checkpoint and that she had gone to the gas station to buy some milk, not to avoid the roadblock. Additionally, Bacallao testified that she answered Parker's questions because he was a police officer, and she thought that she was required to do so. In its order denying the motion to suppress, the trial court concluded that Parker's initial interaction with Bacallao was a "first-tier" encounter that did not involve coercion or detention and that Parker had a reasonable and articulable suspicion that Bacallao had committed a crime after talking with her and was justified in detaining Bacallao further.

In her single enumeration of error, Bacallao argues that the trial court erred when it denied her motion to suppress because Parker's detention of her was illegal. Specifically, Bacallao maintains that there was neither probable cause nor articulable suspicion to support the stop.

> At least three types of police-citizen encounters exist: (1) verbal communications involving no coercion or detention; (2) brief "stops" or "seizures" that require reasonable suspicion; and (3) "arrests," which can only be supported by

probable cause. A first-tier encounter never intrudes upon any constitutionally protected interest, since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual citizens. On the other hand, a second-tier encounter may violate the Fourth Amendment if the officer briefly "stops" or "seizes" a citizen without an articulable suspicion. Articulable suspicion requires a particularized and objective basis for suspecting that a citizen is involved in criminal activity. Moreover, a "seizure" within the meaning of the Fourth Amendment only occurs when, in view of all the circumstances surrounding the incident, a reasonable person believes that he is not free to leave.[5]

Bacallao's position that the stop required articulable suspicion or probable cause presumes that the initial interaction between she and Parker was a second- or third-tier encounter. However, the evidence supports the trial court's determination that it was a first-tier encounter.

In support of her argument, Bacallao relies on *Jorgensen v. State*.[6] In that case, we reversed a DUI conviction where the officer stopped the defendant, who was driving normally, based solely on his intuition that the defendant was avoiding a roadblock when he turned into an apartment complex before reaching the roadblock.[7] The officer pursued the vehicle into the apartment complex, parked behind the defendant, and told him that he was not free to leave.[8] *Jorgensen* is inapposite because there is no evidence in the instant case that Bacallao was initially detained or was told that she was not free to leave. Rather, Parker approached and questioned Bacallao as she exited her parked car.

It is well established that an officer's approach to a stopped vehicle and inquiry into the situation is not a "stop" or "seizure" but rather clearly falls within the realm of the first type of police-citizen encounter. . . . Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent

---

[5] (Citations, punctuation and footnotes omitted.) *State v. Causey*, 246 Ga. App. 829, 831 (1) (540 SE2d 696) (2000).

[6] 207 Ga. App. 545 (428 SE2d 440) (1993).

[7] Id. at 545-546.

[8] Id.

to search — as long as the police do not convey a message that compliance with their requests is required.[9]

Accordingly, Parker was authorized to approach Bacallao and ask to examine her driver's license. Thus, the trial court's conclusion that Parker and Bacallao's interaction was a first-tier encounter that did not require articulable suspicion was supported by the evidence.[10] Furthermore, once Parker smelled alcohol on Bacallao's breath, he had the required articulable suspicion to investigate further.[11] Therefore, we affirm the trial court's denial of Bacallao's motion to suppress.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED JANUARY 6, 2011.

*McArthur, McArthur & Overend, John J. McArthur*, for appellant.

*Kenneth W. Mauldin, District Attorney, James V. Chafin, Assistant District Attorney*, for appellee.

---

[9] (Citations and punctuation omitted.) *Stokes v. State*, 238 Ga. App. 230, 232 (518 SE2d 447) (1999).

[10] See *State v. Kaylor*, 234 Ga. App. 495, 497-498 (507 SE2d 233) (1998) (first-tier encounter where officer did not create impression that defendant could not leave, after officer approached defendant as he returned to his parked car). See also *Carrera v. State*, 261 Ga. App. 832, 834 (584 SE2d 2) (2003) (first-tier encounter where police approached defendant's parked car and asked for consent to search but did not give impression that defendant could not leave).

[11] *Blankenship v. State*, 301 Ga. App. 602, 604 (2) (a) (688 SE2d 395) (2009) ("[t]he alcoholic smell provided the officer reasonable grounds to conduct a second-tier investigatory detention") (citations, punctuation and footnotes omitted).