**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**April 5, 2013**

# In the Court of Appeals of Georgia

A13A0116. WALDRON v. THE STATE.                    JE-005C

ELLINGTON, Chief Judge.

We granted Tracy Waldron's application for an interlocutory appeal to consider whether the trial court erred in denying his motion to suppress evidence. Waldron contends that his arresting officer lacked articulable suspicion to stop his vehicle. We disagree and affirm.

We follow three principles when reviewing a trial court's order concerning a motion to suppress evidence:

> First, the judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must

construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citation and punctuation omitted.) *LeRoux v. State*, 300 Ga. App. 310, 311 (684 SE2d 424) (2009).

While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Punctuation and footnote omitted.) *State v. Underwood*, 283 Ga. 498, 500 (1) (661 SE2d 529) (2008).

Viewed in light of these principles, the evidence shows that, on December 31, 2011, a real estate agent, who was preparing to show an empty commercial property in Doraville, discovered that the property had been burglarized and that several air-conditioning units had been taken from the building and stacked together near an open door, seemingly in preparation for transport away from the building. The agent called the police. The responding officer testified that the building that had been burglarized was located on a hill, behind two other closed businesses, at the end of

a 45-yard-long driveway. The area was dark, given the evening hour, and it was secluded behind a tree-line.

As the officer was talking with the real estate agent, he observed a pick-up truck moving along the driveway toward them. Although there were several places where the driver could have turned the truck around, the driver continued toward the crime scene until the truck's lights illuminated the officer's patrol car. The driver stopped abruptly, backed up, and drove away. Given that the burglary under investigation appeared to be in progress, and given that there was no other apparent reason for the driver to be behind closed businesses, the officer followed the pick-up truck and pulled the driver over. The officer asked the driver what he was doing in the area, and the driver said that he and his friend were looking for scrap metal. The officer smelled an alcoholic beverage coming from the driver, and Waldron was arrested and charged with DUI.

> At least three types of police-citizen encounters exist: verbal communications involving no coercion or detention; brief "stops" or "seizures" that require reasonable suspicion; and "arrests," which can only be supported by probable cause. A first-tier encounter never intrudes upon any constitutionally protected interest, since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual

citizens. On the other hand, a second-tier encounter may violate the Fourth Amendment if the officer briefly "stops" or "seizes" a citizen without an articulable suspicion. Articulable suspicion requires a particularized and objective basis for suspecting that a citizen is involved in criminal activity.

(Citations and punctuation omitted.) *Brittian v. State*, 257 Ga. App. 729, 731 (572 SE2d 76) (2002).

Although an investigative stop cannot be based on an officer's mere hunch that criminal activity is afoot, an officer may draw on his or her own experience and specialized training when making inferences and deductions. *Rolfe v. State*, 278 Ga. App. 605, 606-607 (630 SE2d 438) (2006). The inquiry is whether, given the totality of the circumstances, the officer has a particularized and objective basis for suspecting that a person is, or is about to be, engaged in criminal activity. *Hughes v. State*, 269 Ga. 258, 259-260 (497 SE2d 790) (1998).

In considering the totality of the circumstances in each case, a court must avoid evaluating the facts in isolation. Even where each in a series of acts may be susceptible to an innocent explanation, taken together they may collectively amount to reasonable suspicion justifying an officer's investigative stop. Moreover, a determination that reasonable suspicion exists need not rule out the possibility of innocent conduct.

(Citations and punctuation omitted.) *Rolfe v. State*, 278 Ga. App. at 607.

4

Given the totality of the circumstances, the trial court did not err in concluding that the officer had a reasonable suspicion that the driver of the vehicle he stopped was, or was about to be, engaged in criminal activity for these reasons: The burglary to which the officer responded appeared to be in progress. Someone had apparently intended to come back for the air-conditioning units stacked by the open door into the premises. The hour was late, the businesses were closed, and there was no reason for anyone to be driving to them or to the empty properties. The driver, nevertheless, continued down a 45-yard-long driveway toward the crime scene, although there were several places to turn around. The driver was in a pick-up truck, a vehicle capable of transporting several air-conditioning units. Finally, the driver quickly retreated when he saw the police car.

Taken together, the above factors were sufficient to give the officer a particularized and objective basis for a reasonable suspicion to stop the vehicle and to investigate. See *Rolfe v. State*, 278 Ga. App. at 607. (reasonable suspicion existed for a traffic stop when a vehicle drove past a closed store that had been recently targeted by burglars, continued down a dead-end road in the early hours of the morning, and appeared to attempt to elude the police once spotted by them); See also *LeRoux v. State*, 300 Ga. App. at 311-312 (reasonable suspicion existed for a traffic

5

stop when driver entered upon private golf course driveway at 2:30 a.m., the property had experienced past criminal activity, and the driver drove around in circles.) Consequently, we find no error.

*Judgment affirmed. Phipps, P. J., and Branch, J., concur.*