**FOURTH DIVISION**
**BARNES, P. J.**
**MCMILLIAN and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 1, 2016**

# In the Court of Appeals of Georgia

A15A1638. REBUFFI v. THE STATE.

RICKMAN, Judge.

After a bench trial, Matteo Rebuffi was convicted of driving under the influence of alcohol to the extent he was a less safe driver.[1] See OCGA § 40-6-391 (a) (1). He appeals from the denial of his motion for new trial, contending that the trial court erred in denying his motion to suppress evidence allegedly unlawfully obtained. We affirm.

When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the

---

[1] Rebuffi was acquitted of reckless driving.

evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations and punctuation omitted.) *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

Construed in favor of the trial court's findings and judgment, the evidence showed the following. A police officer working a foot patrol as a courtesy officer at the apartment complex at which he lived testified that on October 26, 2012, he heard the engine of a vehicle "revving very loudly," and he observed the vehicle traveling at a high rate of speed inside the apartment complex. The officer followed the vehicle, and heard the tires squealing as it turned right through a roundabout. The officer approached the vehicle, which was parked in the roadway. He observed several people exiting the vehicle and running into an apartment building, and he made contact with the driver before the driver entered the apartment building. The officer identified Rebuffi in court as the driver of the vehicle.

The officer asked Rebuffi why he was speeding; as Rebuffi spoke, the officer smelled an odor of alcohol emanating from Rebuffi's mouth. Rebuffi admitted to the officer that he had been driving, and that he had consumed three alcoholic beverages that evening. The officer observed that Rebuffi's eyes were "glassy and slightly bloodshot." The officer suspected that Rebuffi had been driving under the influence of alcohol, and he called the county dispatch and asked for a zone officer to respond to the scene. The officer instructed Rebuffi to sit on the curb outside; Miranda warnings were not read to Rebuffi.

The record reflects that approximately 23 minutes later, a DUI task force officer arrived at the apartment complex. That officer testified that as he spoke with Rebuffi, he detected a strong odor of an alcoholic beverage emanating from Rebuffi's breath, and that Rebuffi's speech was slurred. The officer testified that he asked Rebuffi about the odor of alcohol, and that Rebuffi replied that he had consumed three alcoholic beverages; Rebuffi's eyes were bloodshot and glassy; an alco-sensor test showed that alcohol was present on Rebuffi's breath; and field sobriety evaluations revealed that Rebuffi's ability to drive was impaired. The officer observed six out of six possible clues of impairment on the HGN evaluation; and three out of four possible clues of impairment on the one-leg-stand evaluation. The

3

officer formed the opinion that Rebuffi was under the influence of alcohol to the extent that he was less safe to drive, and he placed Rebuffi under arrest.

The DUI task force officer then read the Implied Consent warning and requested that Rebuffi submit to a breath test. Rebuffi refused to submit to the test. The DUI task force officer captured video/audio recording from the time of his arrival on the scene of his investigation into the incident. That recording was admitted in evidence, without objection.

Rebuffi contends that the trial court erred in denying his motion to suppress his statements to law enforcement officers, the results of the field sobriety tests, and his refusal to submit to the state's breath test because he was arrested but was not informed of his *Miranda* rights when: (1) the security officer, in a "loud, screaming voice," ordered Rebuffi out of his apartment and began questioning him; and (2) twenty-three minutes elapsed from the time he was detained and instructed to sit on the curb and the time the DUI task force officer arrived on the scene.

1. Rebuffi contends that the trial court erred in denying his motion to suppress his statements to law enforcement officers, the results of the field sobriety tests, and his refusal to submit to the state's breath test because he was arrested but was not

4

informed of his *Miranda* rights when the security officer, in a "loud, screaming voice," ordered Rebuffi out of his apartment and began questioning him.

(a) We first address Rebuffi's assertion that the security officer ordered him out of the apartment. The security officer testified that he made contact with Rebuffi after Rebuffi had parked and exited the vehicle but before he could enter the apartment building. Rebuffi called to the stand two witnesses who testified that Rebuffi had entered the apartment; one of the witnesses further testified that as she stood on the patio, the security officer approached and began yelling at her, demanding the owner of the apartment to go outside.

Pointing out conflicts and inconsistencies in the testimony of the witnesses who testified on behalf of Rebuffi, the trial court found that the security officer made contact with Rebuffi before he could enter his apartment because it found the security officer to be more credible on this issue than Rebuffi's witnesses. In its order denying Rebuffi's motion for new trial, the trial court ruled:

> The Defense witnesses were found to not be credible on th[e] issue [of whether the security officer had stopped Rebuffi before he could enter his apartment or whether Rebuffi had already entered his apartment and was ordered out by the security officer]. Therefore, any suppression claims based on the allegation of [Rebuffi] being removed from his apartment must necessarily fail.

"The trial court, as the trier of fact, had the sole province of determining the credibility of witnesses and resolving any conflicts or inconsistencies in the evidence." (Citation omitted.) *Acree v. State*, 319 Ga. App. 854, 855 (737 SE2d 103) (2013).

The security officer's testimony, the trial judge's specific references to the contradictory testimony of Rebuffi's witnesses, and the trial judge's opportunity to observe the demeanor of the witnesses were sufficient to support the judge's conclusions and this court will not disturb those findings. "[T]he trial court's determinations with regard to facts and especially with regard to credibility are supported by the evidence and we must accept them as they are not clearly erroneous." (Citation omitted.) *Tate*, 264 Ga. at 57 (3).

(b) Next, we address Rebuffi's claim that police questioning violated his *Miranda* rights. "*Miranda* warnings are required only if the detention has ripened into a *custodial* arrest." (Citations omitted; emphasis in original) *Abrahamson v. State*, 276 Ga. App. 584, 585 (623 SE2d 764) (2005). "[A]n officer's approach to a stopped vehicle and inquiry into the situation is not a 'stop' or 'seizure' but rather clearly falls within the realm of the first type of police-citizen encounter." (Punctuation and footnoted omitted.) *Bacallao v. State*, 307 Ga. App. 539, 541 (705 SE2d 307) (2011).

6

"A first-tier encounter never intrudes upon any constitutionally protected interest, since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual citizens." (Footnote omitted.) Id.

Accordingly, in this case, the security officer was authorized to approach Rebuffi's stopped vehicle and ask him why he was driving in the manner that he was, and no unlawful seizure of Rebuffi occurred, which would have required that he be given *Miranda* warnings.

2. Rebuffi contends that the trial court erred in denying his motion to suppress his statements to law enforcement officers, the results of the field sobriety tests, and his refusal to submit to the state's breath test because he was arrested but was not informed of his *Miranda* rights when twenty-three minutes elapsed from the time he was detained and instructed to sit on the curb and the time the DUI task force officer arrived on the scene.

Once the officer smelled alcohol on Rebuffi's breath, he had the required articulable suspicion to investigate further and conduct a second-tier investigatory detention. See id. at 541-542; *Blankenship v. State*, 301 Ga. App. 602, 604 (2) (a) (688 SE2d 395) (2009). The record reflects that Rebuffi was detained for

7

approximately 23 minutes; this Court has previously held that a wait of more than twice this length of time from the time of a traffic stop to the commencement of an investigative search of a car did not convert the investigation into a custodial situation. See *Harper v. State*, 243 Ga. App. 705, 706 (1) (534 SE2d 157) (2000), citing *Aldridge v. State*, 237 Ga. App. 209, 213 (3) (515 SE2d 397) (1999). Moreover, there was evidence that Rebuffi was permitted to sit or stand as the security officer waited for a DUI task force officer to arrive at the scene; Rebuffi was not told that he was under arrest; and Rebuffi was not handcuffed.

Given these circumstances, "a reasonable person could conclude that [Rebuffi's] freedom of action was only temporarily curtailed and that a final determination of his status was simply delayed." *Abrahamson*, 276 Ga. App. at 586. We conclude that the lapse of time between Rebuffi's detention and the DUI task force officer's arrival on the scene did not cause Rebuffi's detention to ripen into a custodial arrest which would have required that *Miranda* warnings be given. See id. at 586-587.

*Judgment affirmed. Barnes, P. J. and McMillian, J., concur.*