A02A1847. MUELLER v. THE STATE.
(572 SE2d 627)

PHIPPS, Judge.

Edmond Mueller was charged with driving under the influence with a blood alcohol concentration of 0.08 grams or more (OCGA § 40-6-391 (a) (5)) and with driving under the influence of alcohol to the extent that it was less safe to drive (OCGA § 40-6-391 (a) (1)). At a bench trial, he was acquitted of the former charge and convicted of the latter. He appeals his conviction, contending that he was given a defective implied consent warning, that the trial court placed erroneous limitations on his cross-examination of a State's witness, and that the evidence was insufficient to support the conviction. Finding no merit in any of these contentions, we affirm.

On August 26, 2001, at approximately 2:11 a.m., City of Atlanta Police Officer Bond observed Mueller's speeding vehicle. Bond drove his patrol car behind Mueller's vehicle and activated his emergency lights. Mueller drove a short distance before stopping his vehicle halfway on the curb and halfway on the grass adjacent to the roadway.

Upon approaching Mueller, Bond noticed that he had a strong odor of alcoholic beverage on his breath, his eyes were glassy and bloodshot, his speech was slightly slurred, his face was flushed, and he appeared lethargic, as though he might be impaired by alcohol. Initially, Mueller admitted that he had had one drink that night but denied taking any drugs. Mueller, however, later acknowledged that

he had had more than one drink and claimed to have been taking painkillers earlier in the day.

At Bond's request, Mueller submitted to a series of field sobriety evaluations. He exhibited all clues on a horizontal gaze nystagmus test, was unable to recite the alphabet correctly, showed significant indicators of impairment while attempting to perform a nine-step walk and turn, and was either unable or unwilling to blow into an alco-sensor.

Officer Bond thereupon arrested Mueller for DUI, read him implied consent warnings, and obtained Mueller's consent to submit to State-administered breath and blood tests. The result of the first breath sample was 0.201 grams, and the result of the second sample was 0.196 grams. Based upon these results, Bond told Mueller that he was not going to administer any blood tests.

1. Mueller contends that the trial court erred in admitting the results of the breath test because his consent to submit to it was unlawfully obtained, and his right to request independent testing was thwarted, due to misleading information that both blood and breath tests would be administered by the State.

OCGA § 40-5-67.1 (b) (2) required Officer Bond to inform Mueller that

> "Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs. . . . After first submitting to the required state tests, you are entitled to additional chemical tests of your blood, breath, urine, or other bodily substances at your own expense and from qualified personnel of your own choosing. Will you submit to the state administered chemical tests of your (*designaté which tests*) under the implied consent law?"[1]

As recognized in *State v. Hopkins*,[2] "[t]he last sentence of the warning specifically requires the officer to designate the tests for which he is requesting consent. The officer is not required to read the words 'designate which tests' contained in OCGA § 40-5-67.1 (b)."

Officer Bond concluded the implied consent warning by asking Mueller whether he would submit to State-administered chemical "tests" of his "breath and blood" under the implied consent law. Mueller argues that because Bond requested both a breath and blood test, both tests had to be administered. This argument is directly contra-

---

[1] (Emphasis in original.)
[2] 232 Ga. App. 705 (503 SE2d 590) (1998).

dicted by OCGA § 40-5-67.1 (a), which provides that "the requesting law enforcement officer shall designate which test or tests shall be administered initially and may subsequently require a test or tests of any substances not initially tested." Under the implied consent warning, the arresting officer's decision to have the State administer only a breath test could not have misled Mueller into believing that he could not request an independent blood test from qualified personnel of his own choosing.[3]

2. In reliance on *Cato v. State*,[4] Mueller contends that the trial court erred by refusing to allow him to cross-examine Officer Bond concerning his failure to investigate the possibility that Mueller was under the influence of drugs rather than alcohol.

In his defense, Mueller asserted that he was under the influence of prescription drugs and not alcohol. Although Mueller told Officer Bond that he had been taking prescription painkillers for an accident he had gotten into a couple of weeks earlier, Mueller presented no evidence to support this claim at trial. In contrast, the State produced both testimonial and forensic evidence showing that Mueller was under the influence of alcohol. The trial court did not abuse its discretion in ruling that Officer Bond's failure to investigate the possibility that Mueller was under the influence of drugs as well as alcohol was not relevant in this case.

Mueller's reliance on *Cato* is misplaced. To begin with, *Cato* is a physical precedent only and, therefore, is not binding authority.[5] Moreover, although *Cato* does support the proposition that a person may defend against a charge of driving under the influence of alcohol to the extent that it is less safe to drive by showing that he was also under the influence of a drug he was legally entitled to use, there has been a change in the underlying DUI case law since *Cato* was decided.

In this regard, *Cato* recognized OCGA § 40-6-391 (b), which provides:

> The fact that any person charged with violating this Code section is or has been legally entitled to use a drug shall not constitute a defense against any charge of violating this Code section; provided, however, that such person shall not be in violation of this Code section unless such person is rendered incapable of driving safely as a result of using a drug

---

[3] Compare *Pilkenton v. State*, 254 Ga. App. 127-128 (1) (561 SE2d 462) (2002) (where the implied consent warning misled the defendant as to her statutory privileges).

[4] 212 Ga. App. 417 (441 SE2d 900) (1994).

[5] See Court of Appeals Rule 33 (a) (if there is a special concurrence without a statement of agreement with all that is said in the opinion, the opinion is a physical precedent only).

other than alcohol which such person is legally entitled to use.

When *Cato* was decided, our Supreme Court had held in *Steele v. State*[6] that the "incapable of driving safely" standard places upon the State a greater burden of proof than does the "less safe for the person to drive" standard. The Supreme Court, however, subsequently held in *State v. Kachwalla*[7] that the two standards are equivalent. Under *Steele,* the State was put to a higher burden of proof if it would not have been less safe for the defendant to drive but for his legal drug use. Under *Kachwalla,* this is no longer the case. Therefore, a person may not defend against a charge that he was driving under the influence of alcohol to the extent that it was less safe to drive by showing that his impaired driving ability resulted from legal drug use as well as alcohol consumption. The court did not abuse its discretion in limiting Mueller's cross-examination of the officer.

3. There was sufficient evidence to find beyond a reasonable doubt that Mueller was guilty of driving under the influence of alcohol to the extent that it was less safe for him to drive (and that he was guilty of driving with an unlawful blood alcohol concentration).[8]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED AUGUST 30, 2002 —
RECONSIDERATION DENIED OCTOBER 10, 2002 — 

*Chestney-Hawkins Law Firm, Michael M. Hawkins,* for appellant.

*Joseph J. Drolet, Solicitor-General, Meka B. Ward, Assistant Solicitor-General,* for appellee.

---

[6] 260 Ga. 835 (400 SE2d 1) (1991).

[7] 274 Ga. 886 (561 SE2d 403) (2002).

[8] *Pecina v. State,* 274 Ga. 416, 419 (2) (554 SE2d 167) (2001).