## A03A2144. THE STATE v. BRANTLEY.
(587 SE2d 383)

ELDRIDGE, Judge.

In this DUI case arising from a traffic stop on Second Street in Brunswick, the State appeals from the State Court of Glynn County's order granting Thomas Lee Brantley's motion to suppress the results of his breath test. For the reasons that follow, we reverse the judgment of the court below.

A suppression hearing was held on January 9, 2003. Pertinent portions thereof show that, when the arresting officer read Brantley the implied consent warning on the scene, the officer asked, "Will you submit to the state-administered chemical test of your blood or breath under the implied consent law?" The officer testified that he always requests consent for a blood "and/or" breath test in order to leave the option for both open; "if the machine [(Intoxilyzer)] is down or is not working we then revert to the blood which becomes the state test that we would require." Brantley agreed to state-administered chemical testing as designated by the officer.

---

[5] (Punctuation and footnote omitted.) *Putman v. State*, 257 Ga. App. 902-903 (572 SE2d 412) (2002).

At the station, the officer told Brantley that an Intoxilyzer 5000 breath test would be given. Brantley stated that he did not "trust" breath tests and did not want to take one; instead, he wanted a blood test. The officer informed Brantley that the State-administered chemical test would be of his breath but, after the breath test, Brantley could obtain an independent blood test at his own expense. The officer reread the entire implied consent warning, including that portion wherein Brantley was "entitled to an additional chemical test of your blood, breath, urine, and other bodily substances at your own expense and from qualified personnel of your own choosing." Brantley agreed to the breath test; he did not request an independent chemical test.

After hearing the evidence and the arguments of the parties, the state court held,

> The State says I'm going to give you a blood test and a breath test. He gets to the station and he tells them give me the blood test, and then the officer says, no, you take my breath test first and then if you want a blood test you've got to pay for it and you can have a qualified. . . . I'll grant the Motion to Suppress and Motion in Limine. . . . On the grounds I stated, that the rights were not clearly stated to the accused and he did not have full information to make an election. And, Officer, when you're at the scene and advise them on one test or the other test, but not and/or. It's too confusing.

The state court entered a February 3, 2003 order on the motion to suppress finding, "since the Officer did not designate what type of test he wanted defendant to take, the State Administered Intoxilyzer 5000 test results are suppressed." The next day, however, an order was filed wherein the state court vacated the February 3 order as "entered inadvertently." Four months later, on June 11, 2003, the court entered an order granting Brantley's "Motions in Limine and to Suppress to the extent to the State's administered breath test results." No legal basis for the court's decision was stated in the order. *Held*:

In this case, it is clear that the officer asked for a breath "and/or" a blood test, leaving it open as to whether one or both would be administered. Brantley consented to both. At the station, however, he wanted the officer to administer a blood test *in lieu* of a breath test. He was informed that the State would administer a breath test, but that he could request an independent blood test at his own expense. It is undisputed that Brantley did not make such request. Accordingly, Brantley's right to an independent chemical test is not

implicated in this case. Instead, the issue as framed by the state court is whether an officer may request consent to perform more than one chemical test and then, when consent is obtained, make a decision to perform only one of the tests to which the defendant consented.

We find that obtaining consent for chemical testing pursuant to implied consent requirements does not dictate which consented-to test will actually be administered. Just as an officer may advise a person "of his implied consent rights and [request] multiple tests at one time,"[1] a requesting law enforcement officer is authorized to decide "which of the test or tests shall be administered."[2] Indeed, our Code repeatedly states that an officer may administer a "test or tests."[3] Nothing in the statutory scheme relating to chemical testing or implied consent states that an officer who obtains consent for more than one chemical test is *required* to administer all of the tests for which consent was obtained. As long as a defendant's right to an independent chemical test is clear, an officer may obtain consent for more than one chemical test and then elect which consented-to "test or tests" will be administered. And, in that regard,

> [the o]fficer . . . concluded the implied consent warning by asking [Brantley] whether he would submit to State-administered chemical "tests" of his "breath and blood" under the implied consent law. [Brantley] argues that because [the officer] requested both a breath and blood test, both tests had to be administered. This argument is directly contradicted by OCGA § 40-5-67.1 (a), which provides that "the requesting law enforcement officer shall designate which test or tests shall be administered initially and may subsequently require a test or tests of any substances not initially tested." Under the implied consent warning, the arresting officer's decision to have the State administer only a breath test could not have misled [Brantley] into believing that he could not request an independent blood test from qualified personnel of his own choosing.[4]

*Judgment reversed. Johnson, P. J., and Mikell, J., concur.*

---

[1] *McKeown v. State*, 187 Ga. App. 685, 686 (1) (371 SE2d 243) (1988).

[2] OCGA § 40-5-55 (a).

[3] OCGA §§ 40-5-67.1 (a) ("requesting law enforcement officer shall designate which test or tests shall be administered initially"); 40-6-392 (a) (4) (a person who submits to a chemical "test or tests at the request of a law enforcement officer" entitled to full information on such tests).

[4] (Footnote omitted.) *Mueller v. State*, 257 Ga. App. 830, 831-832 (1) (572 SE2d 627) (2002).

DECIDED SEPTEMBER 12, 2003.

*Richard H. Taylor, Solicitor-General*, for appellant.
*Robert L. Crowe*, for appellee.