A08A1735. PETERSON v. THE STATE.

(668 SE2d 544)

ANDREWS, Judge.

On appeal from his conviction for driving under the influence (DUI) and failing to obey a traffic control device, Mark Peterson argues that the trial court erred when it denied his motion to suppress, when it failed to take corrective measures concerning a sleeping juror, and when it limited his cross-examination of witnesses. Peterson also argues that trial counsel was ineffective. We find no error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the record shows that at around midnight on June 9, 2006, an officer with the Cherokee County Police Department saw Peterson's black Saab stopped well over the stop bar at a large and well-marked intersection. The officer watched as Peterson inched forward even further into the intersection. When some lights facing Peterson turned green, he proceeded to make a turn even though the arrows indicating that turn remained red. The officer then stopped Peterson for running a red light. Peterson told the officer that he did not realize he had run the light. As the officer reviewed Peterson's license and insurance information, he noted that Peterson had bloodshot and watery eyes and was unusually friendly, "almost as if

he was trying to divert attention" from himself. Because the officer was suffering from a sinus infection at the time and could not smell at all, he called a second officer to the scene.

During the ten minutes or less before the second officer arrived, the first officer checked Peterson's license and tag, including a discrepancy between the two. When the second officer arrived, he smelled alcohol coming from Peterson, who said that he had consumed alcohol earlier that evening. The second officer asked Peterson to exit his car and obtained his consent to search it. The first officer administered horizontal gaze nystagmus (HGN), walk and turn, and one-leg stand tests, all of which showed signs of impairment, and obtained a positive alco-sensor result. Peterson consented to a state-administered breath test, which showed a blood-alcohol concentration of 0.095.

After the trial court denied his motion to suppress, a jury found Peterson guilty of DUI per se, DUI to the extent he was less safe to drive, and failure to obey a traffic control device. His motion for new trial was denied.

1. Peterson argues that the trial court erred when it denied his motion to suppress because the first officer (a) impermissibly prolonged the initial traffic stop and (b) began his DUI investigation without a reasonable and articulable suspicion that criminal activity had occurred. We disagree.

> On appeal from a ruling on a motion to suppress, we must construe the evidence most favorably to affirming the trial court's factual findings and judgment. We accept the trial court's factual and credibility determinations unless they are clearly erroneous, and the factual findings will be upheld if they are supported by any evidence. The trial court's application of the law to undisputed facts, however, is subject to a de novo standard of review.

(Footnotes omitted.) *State v. Sledge*, 264 Ga. App. 612, 613 (591 SE2d 479) (2003).

More specifically, a police officer's purpose during a traffic stop

> is to enforce the laws of the roadway, and ordinarily to investigate the manner of driving with the intent to issue a citation or warning. Once the purpose of that stop has been fulfilled, the continued detention of the car and the occupants amounts to a second detention.

(Citation and punctuation omitted.) *Salmeron v. State*, 280 Ga. 735, 736 (1) (632 SE2d 645) (2006). However, "a law enforcement officer's

continued questioning of a vehicle's driver and passengers outside the scope of a valid traffic stop passes muster under the Fourth Amendment . . . when the officer has a reasonable articulable suspicion of other illegal activity." *Daniel v. State*, 277 Ga. 840, 841 (1) (597 SE2d 116) (2004). "Whether a given set of facts rises to the level of reasonable, articulable suspicion of criminal activity is a legal question." (Citation and footnote omitted.) *Jones v. State*, 253 Ga. App. 870, 873 (560 SE2d 749) (2002). "The strength of the evidence . . . *and* the length of continued detention must be considered *together* to determine whether a trial court's decision to grant or deny a motion to suppress passes constitutional muster." (Emphasis supplied.) *Richbow v. State*, 293 Ga. App. 556, 559 (667 SE2d 418) (2008).

Here, the police officer observed a number of irregularities, including not only Peterson's running of the red light but also his creeping over the stop bar, his bloodshot and watery eyes, and his unusual demeanor, all of which indicated that he might be driving under the influence of alcohol or drugs. During the few minutes before the second officer arrived, the first officer did not interrogate Peterson further, but checked his license and tag, including the fact that the tag "returned to a different vehicle."

The first officer's incapacity to smell meant that critical evidence concerning any further DUI investigation was missing, and the additional time between completing Peterson's document check and the arrival of the second officer, who could and did provide that missing evidence, could not have been more than a few minutes. We therefore agree with the trial court that the traffic stop was not impermissibly prolonged pending the arrival of the second officer. When the latter arrived and smelled alcohol, police obtained sufficiently reasonable and articulable suspicion to administer field sobriety and alco-sensor tests. See *Richbow*, 293 Ga. App. at 558 (circumstances including nervousness, an unusual number of cell phones, and a strong smell of air freshener was sufficient to justify a five-minute delay before arrival of drug dogs); *State v. Johnson*, 282 Ga. App. 102, 105 (637 SE2d 825) (2006) (reversing grant of motion to suppress where officer smelled alcohol and obtained consent to a search yielding methamphetamine on defendant's exit of his car; officer's purpose of determining whether defendant was DUI could not be fulfilled without administering field sobriety tests).

It follows that the evidence was sufficient to sustain Peterson's conviction. See OCGA §§ 40-6-391 (a) (1) (defining less-safe DUI), (a) (5) (defining per se DUI as a blood alcohol level of "0.08 grams or more at any time within three hours" after driving), 40-6-20 (defining failure to obey a traffic control device); *Jackson*, 443 U. S. at 319 (III) (B).

2. Peterson argues that the trial court erred in failing to take corrective measures concerning a sleeping juror. We disagree.

> Should a juror fall asleep during the course of a trial it is the duty of the trial judge to awaken him. Should counsel or the parties in a trial observe a sleeping juror it is their duty to bring it to the attention of the court. What a litigant may not do is observe a juror sleeping, fail to bring this to the judge's attention at a time when corrective action may be had, take a chance on a favorable verdict, and then when the verdict is unfavorable have a mistrial or new trial because of the otiose juror.

(Citations omitted.) *Foster v. State*, 255 Ga. 425, 425-426 (2) (339 SE2d 256) (1986).

After the playing of a video recording, defense counsel told the trial court that a juror had been asleep "for most of the last hour and a half." The trial court disagreed: "I was watching the jury, and I don't think they slept. . . . I don't believe he slept all the time. He might have closed his eyes a few times, but no, I don't think so."

(a) Peterson neither asked for corrective action nor moved for a mistrial after the trial court's ruling. It follows that his assertion of error concerning it presents nothing for us to review. See *Stephens v. State*, 259 Ga. 820, 821 (4) (388 SE2d 519) (1990) (failure to object further or move for mistrial after trial court responds to initial objection waives arguments on appeal).

(b) Even if the argument had not been waived, moreover, we are in no position to substitute our judgment on the matter for that of the trial court, which flatly contradicted counsel's version of events based on its own observation of the jury.

3. Peterson complains that the trial court limited his right to cross-examination by barring inquiry into alternative explanations as to why Peterson ran the red light; limiting his challenge to the second officer's credibility, including demotions on the officer's record; and barring testimony by the Intoxilyzer operator concerning the mechanical workings of the device. "While a defendant is entitled to effective cross-examination, he is not entitled to unfettered cross-examination, and the trial court has broad discretion in limiting its scope." (Citation and punctuation omitted.) *Al-Amin v. State*, 278 Ga. 74, 84 (14) (597 SE2d 332) (2004). We have reviewed the record and find that the trial court acted well within its discretion when it limited these portions of Peterson's cross-examination as irrelevant or probative of matters best left to the jury. See *Yarbrough v. State*, 241 Ga. App. 777, 782 (5) (527 SE2d 628) (2000) (no abuse of discretion in limiting cross-examination concerning matter of DUI

defendant's possession of keys to truck; "[t]he question posed was for the jury to decide after considering all of the evidence").

4. Peterson also asserts that his trial counsel was ineffective when he failed to object or move for a mistrial concerning the allegedly sleeping juror. We disagree.

To show ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Suggs v. State*, 272 Ga. 85, 87-88 (4) (526 SE2d 347) (2000), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). The question of ineffectiveness is a mixed one of both law and fact: "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Footnote omitted.) *Suggs*, 272 Ga. at 88 (4).

As we have held in Division 2, we cannot contradict the trial court's finding that the juror did not fall asleep. As a result, any objection or motion on the subject would have been unmeritorious. See *Davis v. State*, 267 Ga. App. 245, 246 (2) (599 SE2d 237) (2004) (failure to make meritless motion cannot amount to ineffective assistance). Given Peterson's blood alcohol level of 0.095, moreover, well over the legal limit for DUI per se, we cannot conclude that the results of the trial would likely have been different had some corrective action been taken. See *Lynch v. State*, 293 Ga. App. 858, 862 (2) (668 SE2d 264) (2008).

For all these reasons, the trial court did not err when it denied Peterson's motion for new trial.

*Judgment affirmed. Ruffin, P. J., and Bernes, J., concur.*

DECIDED OCTOBER 20, 2008.

*H. Maddox Kilgore*, for appellant.
*David L. Cannon, Jr., Solicitor-General, Kelly F. Gray, Assistant Solicitor-General*, for appellee.