**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 14, 2013**

# In the Court of Appeals of Georgia

A13A0241. DANIELS v. THE STATE.

BOGGS, Judge.

A jury found Lawrence Daniels guilty of DUI per se and driving with a suspended license. Following the denial of his amended motion for new trial, Daniels appeals, asserting the general grounds, and contending that he was subjected to an illegal search and seizure and that the trial court erred in denying his motion for a continuance. For the following reasons, we affirm.

1. Daniels argues that the evidence was insufficient to sustain his convictions.

On appeal from a criminal conviction, this court views the evidence in the light most favorable to the verdict, and the appellant no longer enjoys the presumption of innocence. *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004). An appellate court does not weigh the evidence or determine witness credibility; instead, it decides whether, under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d

560) (1979), the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. Id.

*Heard v. State*, 317 Ga. App. 663 (731 SE2d 124) (2012).

Construed in favor of the verdict, the evidence showed that officers were conducting a roadblock at about 10:30 p.m. They observed a red Pontiac approach within 75 yards of the roadblock before suddenly turning off of the road and into the parking lot of a closed motel. Believing the driver's sudden turn into the parking lot to be suspicious, an officer drove to the parking lot to investigate. As he entered the parking lot, the officer observed Daniels get out of the vehicle from the driver's side door and walk toward the door of the motel. The officer approached Daniels and asked what he was doing. Daniels responded that "he had come to get a room." The officer told Daniels that the "motel had been shut down for some time." He noticed that Daniels "appeared nervous," had glassy, bloodshot eyes, and had a "very strong" odor of alcohol about him.

A second officer arrived on the scene, made the same observations of Daniels as the first officer, and had Daniels perform a breath test which registered positive for the presence of alcohol. Daniels was arrested for DUI and for driving with a

2

suspended license. He consented to a state-administered breath test which revealed a blood-alcohol level of 0.196. During his encounter with the officers, Daniels did not deny that he was driving the vehicle and at no time claimed that his former girlfriend, who was riding in the front passenger seat, was driving.

Daniels' former girlfriend testified that she and Daniels had been at a birthday party earlier in the evening and that both of them were "drunk" after consuming several alcoholic beverages. She stated that they left the party around 10:30 p.m. and that Daniels was driving her Pontiac. She explained that when Daniels saw the roadblock, he pulled into the motel parking lot. Daniels then got out of the driver's side of her vehicle, walked around to the passenger side and told her to get over in the driver's seat. She refused to move, and soon after, the officer approached Daniels.

Daniels testified in his own defense that after he and his former girlfriend left the party, they "headed to the motel." He stated that she was driving and that he did not know that the motel had been closed. Daniels explained that he got out of the passenger side of the vehicle, walked to the door of the motel, saw that it was closed, and was approached by the officer as he was about to get back in the passenger side of the vehicle. Daniels claimed that the officer's testimony that he was driving was a "blatant lie." He testified that he admitted to the officer that he had been drinking

3

but "wasn't drunk," and that he gave the officer an identification card explaining: "because that's all I've got in my wallet . . . I ain't had no license since 1992. I know I ain't got no business driving and so I ain't been driving." Daniels testified further that his license had been suspended in 2003, specifically: "when I got them other suspended license, and the last one I got in '03, I learned my lesson because I know they was going to send my butt to prison."

Another officer testified that he had served Daniels with a notice that his driver's license had been suspended in October 2001. He testified further that as of the day of trial, Daniels had not obtained a valid driver's license and that he was still under "active suspension." The officer explained that he was given this information through the "911 center; they have capability to run GCIC information, which is a collection of all the drivers' histories."

The evidence outlined above was sufficient to sustain Daniels' conviction for driving with an unlawful alcohol concentration. See OCGA § 40-6-391 (a) (5) (no person shall be in physical control of any moving vehicle while the person's alcohol concentration is 0.08 grams or more); see *Howell v. State*, 179 Ga. App. 632, 633-634 (1) (347 SE2d 358) (1986) (evidence sufficient that defendant was operating vehicle while under the influence of alcohol where officer observed defendant exit the

4

driver's side of car); see also *Mueller v. State*, 257 Ga. App. 830, 833 (3) (572 SE2d 627) (2002). And while Daniels argues that the officer's testimony that his license was suspended was hearsay because the officer obtained the information from an unidentified person at the 911 call center, his own testimony established he had "no license," had knowledge that his license was suspended, and that he was suspended on the day of the incident. Daniels essentially claimed that he was not driving the vehicle because his license was suspended. This evidence was sufficient, albeit circumstantial, to sustain his conviction for driving with a suspended license. See OCGA § 40-5-121 (a); *Heard v. State*, 257 Ga. App. 505, 507-508 (3) (571 SE2d 524) (2002) (evidence sufficient to sustain conviction for driving with a suspended license where defendant responded affirmatively when officer asked him on the scene if his license was suspended).

2. Daniels challenges what he claims was an "illegal search and seizure." Daniels filed a motion to suppress but failed to appear for the hearing on the matter, and the trial court deemed the motion abandoned. During trial, however, the court nonetheless allowed Daniels to make his objection that the officers did not have probable cause to stop him. Following the arguments by both counsel, the trial court denied the motion.

5

Daniels argues on appeal that because the officer pulled into the hotel parking lot behind him, allowing no way for him to leave, he was not free to go and the officer's questioning therefore was unlawful. But the officer testified that he pulled into the parking lot behind Daniels after Daniels had stopped, and that he approached Daniels at the door of the motel. "It is well established that an officer's approach to a stopped vehicle and inquiry into the situation is not a 'stop' or 'seizure' but rather clearly falls within the realm of the first type of police-citizen encounter." (Citation, punctuation and footnote omitted.) *Bacallao v. State*, 307 Ga. App. 539, 541 (705 SE2d 307) (2011). Here, the officer's approach to Daniels was nothing more than a first-tier encounter, and once the officer observed that Daniels smelled strongly of alcohol, had bloodshot eyes, and had just exited the driver's side of the vehicle, after observing Daniels pulling into the parking lot of a closed motel within 75 yards of the roadblock, the officer had sufficient articulable suspicion to continue investigating. Id.; see also *Stokes v. State*, 238 Ga. App. 230, 232 (518 SE2d 447) (1999). This claim of error is therefore without merit.

3. Daniels argues that the trial court erred in denying his motion for a continuance. At the start of trial, Daniels announced that he was not ready to begin trial because of the absence of a witness critical to his defense. Daniels explained that

6

testimony from his mother was needed to establish the bias of his former girlfriend. He argued that the two women had had an altercation the day before trial which caused his mother to have a stroke. Daniels asserted that his mother was in intensive care and could not appear for trial. The State stated in rebuttal that the day before trial, Daniels and his mother attempted to dissuade the former girlfriend from testifying that Daniels was driving. The trial court denied Daniels' motion for a continuance, explaining: "I'm not going to continue it. If she's not under subpoena – I mean he was here in court and I told him his case would be coming up today . . . He knew about this alleged bias before that . . . he knew that he was contending that she was driving."

OCGA § 17-8-25 provides:

In all applications for continuances upon the ground of the absence of a witness, it shall be shown to the court that the witness is absent; that he has been subpoenaed; that he does not reside more than 100 miles from the place of trial by the nearest practical route; that his testimony is material; that the witness is not absent by the permission, directly or indirectly, of the applicant; that the applicant expects he will be able to procure the testimony of the witness at the next term of the court; that the application is not made for the purpose of delay but to enable the applicant to procure the testimony of the absent witness; and the

7

application must state the facts expected to be proved by the absent witness.

A motion for continuance is addressed to the sound discretion of the trial court, and this court will not interfere with the ruling on such a motion unless it is clearly shown that the trial court abused its discretion. *Anthony v. State*, 276 Ga. App. 107, 109 (2) (622 SE2d 450) (2005). "Furthermore, the trial court has discretion in determining whether to grant a continuance for absence of a witness, and that discretion is not abused unless all of the requisites of OCGA § 17-8-25 are shown and the trial court still denied a continuance." (Citation, punctuation and footnote omitted.) Id.

Daniels admittedly did not meet the requirements of OCGA § 17-8-25 because he did not subpoena his mother. And he presented nothing to show that she was in fact hospitalized and unable to appear in court. He argued below, and now here on appeal, that he was unable to comply with the requirements of the statute because the alleged bias did not arise until the day before trial. Although the trial court denied Daniels' motion for a continuance, it allowed Daniels' counsel to question the former girlfriend regarding the altercation. She stated that Daniels and his mother "kept following [her]," and admitted that she and Daniels' mother "got into an argument" the day before trial. When asked whether the argument was the "reason[ ] that you are

8

now testifying the way you are today about what happened," the former girlfriend stated, "No, sir, it's not," and asserted that she was telling the truth about what had occurred the night Daniels was arrested.

"It is [ ] axiomatic that harm must be shown from the denial of a motion for a continuance to secure the witness." (Citations and footnote omitted.) *Theophile v. State*, 295 Ga. App. 517, 521 (2) (672 SE2d 479) (2009). Under the circumstances here, Daniels has failed to show any harm from the absence of his mother's testimony. He was allowed to question the former girlfriend regarding whether the altercation involving Daniels' mother affected her testimony. Moreover, while Daniels argued that the trial court erred in denying his motion for a continuance at the hearing on the motion for new trial, held nearly three years after trial, Daniels failed to present his mother as a witness or proffer her testimony to show how it would have aided his defense. In the absence of any ensuing harm from the denial of his motion for a continuance, Daniels has failed to meet his burden of presenting this court with grounds for reversal. See *Gay v. State*, 220 Ga. App. 78, 79-80 (467 SE2d 383) (1996) (no showing of harm in denial of continuance); *Theophile*, supra (where no transcript of alibi witness testimony during motion for new trial, defendant failed to show harm from denial of motion for continuance due to absence of that witness).

9

*Judgment affirmed. Doyle, P. J. and McFadden, J., concur.*