**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 21, 2014**

# In the Court of Appeals of Georgia

A13A2430. THE STATE v. GAUTHIER.

PHIPPS, Chief Judge.

Marissa Gauthier was arrested and charged with two counts of driving under the influence ("less safe" and unlawful alcohol concentration).[1] She filed a motion to suppress the results of a chemical test of her breath, asserting that police officers had lacked articulable suspicion to stop and detain her, and had lacked probable cause to arrest her and request the chemical test. The trial court granted Gauthier's motion, citing a "lack of articulable suspicion for [the] stop," and stating that Gauthier "was stopped for no legitimate reason." The state appeals,[2] asserting that the officer's

---

[1] OCGA § § 40-6-391 (a) (1), (5).

[2] The state is authorized to bring this appeal because it is from an order dismissing an accusation and/or excluding the results of a test for alcohol, as pertinently provided by OCGA § § 5-7-1 (a) (1), (4).

initial contact with Gauthier was a first-tier encounter, not subject to a reasonable articulable suspicion standard, and that the encounter properly evolved into a second-tier investigative encounter. We agree.

> [T]he trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous; where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.[3]

"Where, as here, the issue turns on the question of whether a trial court committed an error of law in granting a motion to suppress, we apply a de novo standard of review."[4] The appellate court owes no deference to the trial court's conclusions of law.[5]

---

[3] *State v. Preston*, 293 Ga. App. 94, 95-96 (666 SE2d 417) (2008).

[4] *State v. Bethel*, 307 Ga. App. 508, 509 (705 SE2d 860) (2010) (citation omitted).

[5] *Martin v. State*, 316 Ga. App. 220 (728 SE2d 764) (2013) (punctuation and footnote omitted).

At the suppression hearing, a police officer testified that he was on patrol on May 24, 2012 at 2:56 a.m. when he observed a vehicle being driven into a shopping center parking lot and through the lot in a circular manner, and then stopping in a parking space next to a closed business. The officer waited a minute, then drove to the vehicle without activating his vehicle's blue lights or siren, intending to ask the driver what she was doing in the parking lot of a closed business.

The officer approached the driver's side of the vehicle. Gauthier, the vehicle's sole occupant, lowered her window. The officer asked Gauthier what she was doing. Gauthier replied that she was waiting for her boyfriend. The officer asked Gauthier for identification, and she handed him her driver's license. "At that time [the officer] had a backup officer arriving on [the] scene." The first officer detected a strong odor of alcohol emanating from the vehicle; he believed the odor was coming from Gauthier's breath. A second officer arrived "just minutes" after the first officer had made contact with Gauthier.

The second officer approached, noticed an odor of alcohol emanating from inside the vehicle, and observed that Gauthier's eyes were bloodshot and watery; she was crying and seemed distraught. When asked whether she had been drinking, Gauthier replied that she had drunk "one mixed drink." The second officer asked

3

Gauthier to step out of the vehicle, and administered three field sobriety evaluations (HGN, walk-and-turn, and one-legged stand). Gauthier's performances on all three evaluations indicated that she was impaired. Based on his observations, training and experience, the second officer concluded that Gauthier was a less safe driver due to the ingestion of alcohol. He placed her under arrest for DUI at 3:21 a.m., and then read to her the implied consent notice.[6] Thereafter, Gauthier agreed to submit to a chemical test of her breath.

1. *The initial encounter*. The officer was not required to have reasonable articulable suspicion to approach Gauthier in her parked vehicle, ask for identification, and ask what she was doing in the parking lot.

> At least three types of police-citizen encounters exist: verbal communications involving no coercion or detention; brief "stops" or "seizures" that require reasonable suspicion; and "arrests," which can only be supported by probable cause. A first-tier encounter never intrudes upon any constitutionally protected interest, since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual citizens. On the other hand, a second-tier encounter may violate the Fourth Amendment if the officer briefly "stops" or "seizes" a citizen

---

[6] See OCGA § 40-5-55.

without an articulable suspicion. Articulable suspicion requires a particularized and objective basis for suspecting that a citizen is involved in criminal activity. Moreover, a "seizure" within the meaning of the Fourth Amendment only occurs when, in view of all the circumstances surrounding the incident, a reasonable person believes that he is not free to leave.[7]

"The actions of an officer approaching a stopped vehicle, requesting to see a driver's license, and inquiring about possible criminal or suspicious activity clearly fall within the realm of the first type of police-citizen encounter and do not amount to a stop."[8] The officer's actions in this case fell within the realm of the first type of

---

[7] *Brittian v. State*, 257 Ga. App. 729, 731 (572 SE2d 76) (2002) (citations and punctuation omitted).

[8] Id. (citation omitted); see *Pierce v. State*, 319 Ga. App. 721, 722 (738 SE2d 307) (2013) (police officers are permitted to approach citizen, ask for identification, and freely question the citizen, without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave); *State v. Ledford*, 247 Ga. App. 412, 414 (1) (543 SE2d 107) (2000); *McClain v. State*, 226 Ga. App. 714, 716 (1) (487 SE2d 471) (1997).

5

police-citizen encounter and did not amount to a stop.[9] Thus, the initial contact was not subject to a reasonable articulable suspicion standard.[10]

2. *The investigative detention.* During the first-tier encounter, the officers noticed the odor of alcohol emanating from the vehicle (and possibly Gauthier's breath) and that Gauthier's eyes were bloodshot and watery, and Gauthier admitted that she had drunk an alcoholic beverage. "The alcoholic smell provided the officer reasonable grounds to conduct a second-tier investigatory detention."[11] The officers

---

[9] See *Brittian*, supra at 731; *McClain*, supra; *Ledford*, supra. See generally *Bacallao v. State*, 307 Ga. App. 539, 541-542 (705 SE2d 307) (2011) (even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ask to examine the individual's identification, and request consent to search – as long as the police do not convey a message that compliance with their requests is required).

[10] See *Durrance v. State*, 319 Ga. App. 866, 869 (738 SE2d 692) (2013) (officer did not need reasonable suspicion to approach the defendant's stopped vehicle).

[11] *Blankenship v. State*, 301 Ga. App. 602, 604 (a) (688 SE2d 395) (2009) ("[t]he alcoholic smell provided the officer reasonable grounds to conduct a second-tier investigatory detention"); see *Peterson v. State,* 294 Ga. App. 128, 130 (1) (668 SE2d 544) (2008) (alcohol smell alone gave police sufficiently reasonable and articulable suspicion to administer field sobriety tests); *Whitmore v. State,* 289 Ga. App. 107, 109 (657 SE2d 1) (2008) (alcohol smell alone gave police sufficiently reasonable and articulable suspicion to administer field sobriety tests); *McClain*, supra (once the officer noticed the odor of alcohol, he had the required articulable suspicion to continue his inquiry); *Daniels v. State*, 321 Ga. App. 748, 750 (2) (743 SE2d 440) (2013) (the officer's initial contact was a first-tier encounter and, once he

were authorized to conduct field sobriety evaluations as part of that investigatory detention.[12]

The fact that "a matter of minutes" elapsed between the first officer's initial contact with Gauthier and the second officer's arrival did not convert the investigative detention into an arrest. Under the circumstances presented here, a reasonable person in Gauthier's position would conclude that her freedom of action was only temporarily curtailed and that a final determination of her status was simply delayed.[13]

3. *The arrest and request for a chemical test.*

The probable cause needed to conduct an arrest for DUI requires that the officer have knowledge or reasonably trustworthy information that a suspect was actually in physical [custody] of a moving vehicle,

---

noticed the odor of alcohol, defendant's bloodshot eyes, and other circumstances, he had sufficient articulable suspicion to continue investigating); *Brittian*, supra.

[12] *Peterson*, supra.

[13] See *State v. Mosley*, 321 Ga. App. 236, 238-239 (739 SE2d 106) (2013); *DiMauro v. State*, 310 Ga. App. 526, 528-529 (1) (714 SE2d 105) (2011); *Owens v. State*, 308 Ga. App. 374, 379-380 (2) (707 SE2d 584) (2011); *Waters v. State*, 306 Ga. App. 114, 117-118 (1) (701 SE2d 550) (2010); *Thomas v. State*, 294 Ga. App. 108, 111 (1) (668 SE2d 540) (2008); *State v. Picot*, 255 Ga. App. 513, 515-516 (2) (565 SE2d 865) (2002); *Harper v. State*, 243 Ga. App. 705, 706 (1) (534 SE2d 157) (2000).

while under the influence of alcohol … [that] renders [her] incapable of driving safely.[14]

At the time Gauthier was arrested, the officers had observed that an odor of alcohol emanated from Gauthier's vehicle and possibly her breath, Gauthier had watery, bloodshot eyes, she admitted to having consumed a "mixed drink," and her performance on all three field sobriety evaluations indicated she was impaired. The arrest was supported by probable cause.[15] The same evidence gave officers probable cause upon which to request from Gauthier a chemical test under the implied consent statute.[16]

Accordingly, the trial court erred by granting Gauthier's motion to suppress.[17]

*Judgment reversed. Ellington, P. J., and Branch, J., concur.*

---

[14] *Tune v. State*, 286 Ga. App. 32, 34 (1) (a) (648 SE2d 423) (2007).

[15] See *Blankenship*, supra at 604-605 (b); *Harkleroad v. State*, 317 Ga. App. 509, 511 (1) (732 SE2d 278) (2012); *Cann-Hanson v. State*, 223 Ga. App. 690, 691 (1) (478 SE2d 460) (1996).

[16] See OCGA § 40-5-55; *Preston*, supra at 96-97.

[17] See generally *Mosley*, supra.