**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MILLER, P. J. and RICKMAN, P. J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

June 16, 2021

# In the Court of Appeals of Georgia

A21A0390. WILLIAMS v. THE STATE.

MILLER, Presiding Judge.

Andre Williams appeals from the denial of his motion for new trial after the trial court found him guilty at a bench trial of trafficking cocaine and possessing marijuana. On appeal, he argues that the trial court erred in denying his motion to suppress evidence found on his person and in his hotel room because the evidence was obtained as the result of an unlawful search and seizure. Having closely reviewed the record and the relevant case law, we agree with Williams, and so we reverse the denial of his motion for new trial.

Viewed in the light most favorable to the trial court's judgment,[1] the record shows that the Richmond County Sheriff's Office received information from an unidentified source that drugs were being sold out of Room 133 at the Red Carpet Inn in Augusta, Georgia, by an unknown man driving a white and blue Chevrolet truck. Based on this information, Investigator Richard Cowell traveled to the Inn and conducted surveillance. During the surveillance, Investigator Cowell saw a man wearing a white tank top and gray pants exit Room 133, look both ways down the hotel's exterior hallway, enter the room, exit the room, look both ways again, and then walk away. Investigator Cowell transmitted this information to his partner, Officer Cecil Ridley.

Officer Ridley then saw Williams (who matched the description provided by Investigator Cowell) walking along the hotel's outdoor breezeway. Officer Ridley got out of his car, approached Williams, and told him, "How ya doin'? Let me talk to you for a second."[2] Officer Cowell also came to the location to back up Officer Ridley.

---

[1] "On appeal from a bench trial resulting in a criminal conviction, we view all evidence in the light most favorable to the trial court's verdict, and the defendant no longer enjoys the presumption of innocence." (Citation omitted.) *Bray v. State*, 330 Ga. App. 768, 771 (1) (768 SE2d 285) (2015).

[2] Body camera footage of the incident was admitted into evidence and played for the jury.

Officer Ridley first asked Williams for his ID and hotel room key, and Williams gave both to him. Officer Ridley returned Williams' ID at some point during the conversation, but the room key was not returned.

Eventually, the officers told Williams that they were investigating drug sales in the area and asked Williams if he had any drugs, and Williams responded that he had some marijuana in his room. The officers then proceeded to pat down Williams and asked if he had any drugs on his person. In response, Williams "sighed and looked down to his left." At this point, the officers handcuffed Williams, searched him, and found several baggies which together contained 10.2 grams of crack cocaine and approximately 38 grams of powder cocaine. The officers took Williams to his hotel room, where they saw a small amount of marijuana on the nightstand. The officers also found around $2,070 in Williams' pants pocket.

A grand jury indicted Williams on one count of trafficking in cocaine (OCGA § 16-13-31 (a) (1) (A)) and one count of possession of marijuana (OCGA § 16-13-2 (b)). Before trial, Williams moved to suppress all of the evidence, arguing that law enforcement lacked articulable suspicion and probable cause for his detention and the search of his hotel room. The trial court denied the motion after a hearing, concluding that the stop of Williams and the search of his hotel room were lawful. Following a

3

bench trial, the trial court found Williams guilty of both counts and sentenced Williams to 25 years' imprisonment. Williams then filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

In his sole enumeration of error, Williams argues that the trial court erred in denying his motion to suppress because law enforcement did not have a reasonable articulable suspicion to perform a second-tier encounter with him and that law enforcement did not have probable cause to search him or his hotel room. Based on the facts of this particular case, we are constrained to agree that law enforcement did not have a reasonable articulable suspicion to perform a second-tier encounter, and thus any evidence obtained following the initial encounter with Williams must be suppressed.

> In a hearing on a motion to suppress, the trial court sits as the trier of fact and its findings are analogous to a jury verdict. Accordingly, we defer to the trial court's credibility determinations and will not disturb its factual findings in the absence of clear error. And when reviewing the grant or denial of a motion to suppress, an appellate court must construe the evidentiary record in the light most favorable to the trial court's factual findings and judgment. Additionally, as a general rule, appellate courts must limit their consideration of the disputed facts to those expressly found by the trial court. An appellate court may, however, consider facts that definitively can be ascertained exclusively by

4

reference to evidence that is uncontradicted and presents no questions of credibility, such as facts indisputably discernible from a videotape. Finally, although we defer to the trial court's factfinding, we owe no deference to the trial court's legal conclusions. Instead, we independently apply the law to the facts as found by the trial court.

(Citations omitted.) *State v. Culler*, 351 Ga. App. 19 (830 SE2d 434) (2019). When a defendant moves to suppress evidence based on an illegal search, the state must bear the burden of proving that the search was lawful." (Citation omitted.) *Leon-Velazquez v. State*, 269 Ga. App. 760, 761 (1) (605 SE2d 400) (2004); see also OCGA § 17-5-30 (b) (stating that the State bears the burden of proving the lawfulness of a search or seizure).

At least three types of police-citizen encounters exist: verbal communications involving no coercion or detention; brief "stops" or "seizures" that require reasonable suspicion; and "arrests," which can only be supported by probable cause. A first-tier encounter never intrudes upon any constitutionally protected interest, since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual citizens. On the other hand, a second-tier encounter may violate the Fourth Amendment if the officer briefly "stops" or "seizes" a citizen without an articulable suspicion. Articulable suspicion requires a particularized and objective basis for suspecting that a citizen is

5

involved in criminal activity. Moreover, a "seizure" within the meaning of the Fourth Amendment only occurs when, in view of all the circumstances surrounding the incident, a reasonable person believes that he is not free to leave.

(Citation omitted.) *Gauthier v. State*, 326 Ga. App. 473, 475 (1) (756 SE2d 705) (2014).

Here, when Officer Ridley initially approached Williams and asked to "talk to [him] for a second," he initiated a mere first-tier encounter. *Black v. State*, 281 Ga. App. 40, 44 (1) (635 SE2d 568) (2006) (first-tier encounter initiated when the police approached a person and asked if they could "talk to him for a second[.]"). However, during the conversation, and before Williams admitted the presence of drugs, Officer Cowell came to back-up Officer Ridley, and together they backed Williams up against the wall. See *Cutter v. State*, 274 Ga. App. 589, 592 (1) (617 SE2d 588) (2005) ("Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would [include] the threatening presence of several officers[.]") (citation omitted); see also *In the Interest of J.B.*, 314 Ga. App. 678, 681 (1) (725 SE2d 810) (2012) (encounter between police and citizen was found in part to be a second-tier encounter when the officers blocked the exit and did not allow the citizen to leave). At that point, law enforcement had also taken possession of Williams' ID

6

and hotel room key and had not returned his room key. See *State v. Connor*, 288 Ga. App. 517, 519 (654 SE2d 461) (2007) ("In looking to the totality of the circumstances to determine whether a reasonable person would have felt free to leave, [we have] given particular scrutiny [to] whether the [person's] documents have been returned to him. . . . It is clear that "an encounter initiated by [the police] may not be deemed consensual unless the [person's] documents have been returned to him."). Given the totality of the circumstances, no reasonable person in Williams' position would have felt free to leave and terminate the encounter at that point, and therefore the officers' stop of Williams was a second-tier encounter that required the officers to have an articulable suspicion that Williams was involved in criminal activity.

Additionally, we cannot conclude that the State had "a particularized and objective basis for suspecting that [Williams was] involved in criminal activity" so as to justify a second-tier encounter. (Citation omitted.) *Gauthier*, supra, 326 Ga. App. at 475 (1). The record shows that law enforcement received information that drugs were being sold out of Room 133 at the Red Carpet Inn in Augusta, Georgia, by an unknown man driving a white and blue Chevrolet truck, but the record does not reveal any information about the source of this information or whether the source was reliable.

> [A]rticulable suspicion may not be grounded in an anonymous tip alone. To establish reasonable suspicion, anonymous information must contain indicia of reliability, such as by providing details correctly predicting a subject's "not easily predicted" future behavior, or details which police corroborate as showing similar inside information about the subject's affairs.

(Citations omitted.) *State v. Holloway*, 286 Ga. App. 129, 131 (648 SE2d 473) (2007). The information provided by the unidentified source did not, in and of itself, provide details from which the police could predict future conduct because it did not provide any particular specific details about Williams or of any particular future drug transactions that could be used to predict William's behavior. See *State v. Dukes*, 279 Ga. App. 247, 250 (630 SE2d 847) (2006) (anonymous tip that the defendant was "dealing drugs" near a particular store did not provide sufficient details or predict defendant's behavior so as to support a second-tier encounter). Compare *Bowden v. State*, 279 Ga. App. 173, 176 (1) (630 SE2d 792) (2006) (anonymous informant's statement supported an articulable suspicion when the informant arranged a drug transaction and provided all of the details of the transaction to law enforcement, which observed the transaction that occurred).

We also reject the State's argument that the police corroborated the anonymous tip. The State argues that the police corroborated the anonymous tip by obtaining information that (1) Williams engaged in "counter-surveillance" behavior by looking up and down the hallway before exiting his hotel room; (2) Williams had hotel keys for multiple rooms, and the police had information that drugs were also being sold on the other side of the hotel; and (3) Williams did not explain why he had been living in the hotel room for a month. None of this information, however, is "the kind of predictive 'inside information' about alleged criminal activity that can be meaningfully corroborated and that is necessary to support an investigatory stop." (Citation omitted.) *Holloway*, supra, 286 Ga. App. at 132. Crucially, the officers did not observe anyone in possession of drugs or any suspected drug transaction, and they did not see Williams violate any laws. Thus, while law enforcement's "observation of [Williams'] conduct may have warranted further investigation, [it] did not rise to the level of reasonable suspicion needed to justify a second-tier detention[.]" *Dukes*, supra, 279 Ga. App. at 250 (anonymous tip that defendant was "dealing drugs" near a particular store did not support a second-tier encounter when the officers observed defendant at the store but did not see any illegal or drug-related activity occur); see *Baker v. State*, 277 Ga. App. 520, 523 (1) (b) (627 SE2d 145) (2006) (law

9

enforcement's observations of the defendant did not justify a second-tier encounter when the officers observed the defendant drive around in a car described by the informant, but the officers did not see any illegal activity occur).

Accordingly, because law enforcement did not have an articulable suspicion to support a second-tier encounter with Williams, the trial court erred in denying Williams' motion to suppress, and we therefore reverse the denial of Williams' motion for a new trial.

*Judgment reversed. McFadden, C. J., and Rickman, P. J., concur.*